(No. 41773.—

RUSSELL DEAL *et al.,* Appellants, *vs.* MILO W. NELSON *et al.,* Appellees.

*Opinion filed September 26, 1969.*

MATHIS, SLOAN & LITTLER, of Peoria, (JOHN F. SLOAN, of counsel,) for appellants.

ROBERT S. CALKINS, State's Attorney, of Peoria, (RONALD L. HAMM, Assistant State's Attorney, of counsel,) for appellees.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This direct appeal questions the propriety of a judgment of the circuit court of Peoria County which dismissed for want of equity a complaint for an injunction to restrain the collection of 1967 real-estate taxes, or, in the alternative, to enjoin such collections insofar as the assessments upon which they are based exceed the 1966 assessments.

Plaintiffs, who are the officers and governing board members of the Peoria County Taxpayers' Association, filed their complaint on behalf of themselves and some 800 association members, all of whom own real estate in Peoria County. Among the undisputed facts are the following: In 1951 section 25.16 of "AN ACT to revise the law in relation to counties", as approved July 9, 1951 (Ill. Rev. Stat. 1951, ch. 34, par. 25.16), authorized county boards: "To expend monies for the preparation, establishment and maintenance of a detailed property record system which would provide information useful to assessment officials. Such record shall be available to all assessing officials. The County Board may enter into contracts with persons, firms or corporations for the preparation and establishment of such record system." In 1959 this provision was amended by enactment of section 25.16a (Ill. Rev. Stat. 1959, ch. 34, par. 425) which added the following paragraph: "The detailed property record system shall include up-to-date and com-

plete tax maps except where these are otherwise already available or ordered, ownership lists, valuation standards, property record cards, including appraisals for all or any part of the property in the county in accordance with reasonable rules and procedures prescribed by the Department of Revenue, but such system and records shall not be considered to be assessments nor limit the powers and duties of assessing officials." In *People ex rel. Spitzer v. County of La Salle,* 20 Ill.2d 18, we upheld the constitutionality of this legislation and sustained the power of the county board of La Salle County to contract with a professional firm for the preparation of a detailed property record system. In 1965 section 25.16a was further amended to provide that: "* * * when any reappraisal of property is made and included in such record system, such assessing officials shall use the reappraisal value as a basis for assessment purposes." Ill. Rev. Stat. 1965, ch. 34, par. 425.

In preparation for the 1967 quadrennial assessment, the Peoria County Board retained the Cole-Layer-Trumble Company to prepare a property record system. Cole-Layer-Trumble prepared a 100% valuation abstract, a 55% valuation abstract and a property record card for each parcel of real estate in the county, and upon completion of the work the abstracts and record cards, together with the prior year's assessment books, were delivered to the local assessors about April 1, 1967. The local assessors were told not to make any notations or changes in these books. Later they were notified by mail that they could arrange for an appointment to discuss the appraisal of any property with members of the Coles-Layer-Trumble firm; several days were set aside for this purpose and some assessors did appear and discuss property valuations. There was attached to these books a printed form which stated that the figures in the book were the assessed value made by the township assessor. Four of Peoria County's 20 assessors signed the form, and 16 refused to sign it. Two of these who refused to sign submitted their

own valuations for the property within their township. The supervisor of assessments reviewed the appraisals contained in the 55% abstract books, checked them for arithmetical errors and made some corrections based on errors revealed by consultations with assessors and then published the appraisals contained in the 55% abstract books as the assessments made by him. This action resulted in the present litigation.

Plaintiffs contend that the assessments were in fact made by Coles-Layer-Trumble Company, who were not authorized by law to make assessments, rather than the public officials who were authorized to make them. Plaintiffs point out that section 32 of the Revenue Act of 1939 as amended, (Ill. Rev. Stat. 1967, ch. 120, par. 513) required that before January 1, 1967, the county clerk should prepare "the list of lands and lots to be assessed  *  *  *  in books to be provided for that purpose." The evidence establishes that he never made up such books. Plaintiffs further point out that section 41 of the Revenue Act of 1939 as amended (Ill. Rev. Stat. 1967, ch. 120, par. 522) required the supervisor of assessments to call on the county clerk before January 1, 1967, to receive the real property assessment books prepared by the latter. The evidence clearly shows that the supervisor of assessments did not do so.

Plaintiffs complain that the local assessors were precluded from making an independent assessment of each piece of property. The defendants do not seem to dispute this, but cite section 95 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120, par. 576) as authority for the action taken. That section provides that the supervisor of assessments "shall have the same authority as the township assessor to assess and to make changes or alterations in the assessment of property, and shall assess and make such changes or alterations in the assessment of property as though originally made."

Section 1 of article IX of the Illinois constitution pro-

vides in part: "The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise; * * *." It is readily apparent that the intent of the drafters of the constitution was to give to the General Assembly well-nigh unlimited discretion in determining the personnel in whom responsibility for assessing the value of property would be vested. The office of township assessor is one created by the legislature for this purpose, and the legislature may abolish or limit as it chooses the powers of that officer. The legislature accordingly acted within its authority when it gave the supervisor of assessments "the same authority as the township assessor to assess * * *" (Ill. Rev. Stat. 1967, ch. 120, par. 576), and the supervisor of assessments was acting within constitutionally valid statutory authorization when he made the assessments against the property without the benefit, in many instances, of the prior independent assessment of the township assessor. It is clear that it was not originally the legislative intent to completely by-pass the township assessor as a real-estate assessing official (*People ex rel. Spitzer* v. *County of La Salle,* 20 Ill.2d 18, 25-26), but the 1965 amendment requiring assessing officials to "use the reappraisal value as a basis for assessment purposes" can be viewed only as a mandate to those officials to adopt the reappraisal figures, with such changes as subsequently occurring circumstances indicated necessary, as the basis for their assessments. It seems equally clear that the legislation authorizing county boards to contract with independent appraisal firms for county-wide reappraisals of real-estate values was intended to assist in establishing uniform valuation procedures and eliminating the inter-township disparities resulting from assessments by largely autonomous town-

ship assessors. A similar purpose is apparent in vesting the supervisor of assessments, a county official, with "the same authority as the township assessor to assess."

It must be conceded, as plaintiffs argue, that the township assessors were constrained to use the valuations arrived at by the appaisal firm. But the assessors were not precluded from disputing those valuations nor from submitting completely independent assessments, and two of them did so. Others met with the supervisor of assessments and with the appraisal firm, and all were afforded an opportunity to present such suggestions as they might have for valuation changes. The fact that those suggestions were not accepted does not invalidate the subsequent assessments by the supervisor of assessments. Nor does the fact that the final valuations adopted by that officer were apparently substantially those computed by the appraisal firm affect their validity, for section 25.16a specifically authorizes this procedure. We accordingly hold the procedure here utilized constitutionally permissible and legislatively authorized.

Plaintiffs next attack upon two grounds the constitutionality of section 20 of the Revenue Act of 1939, as amended. (Ill. Rev. Stat. 1967, ch. 120, par. 501.) It provides: "(1) Each tract or lot of real property shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." They first argue that land presently used for farming, but suitable for a higher and better use, i.e., residential or urban, must be assessed in accordance with its present use. If that land is valued at a figure greater than its value as farmland, they urge, compelling payment of taxes on this additional valuation constitutes a deprivation of property without due process of law. Plaintiffs do not deny that the assessed valuations placed on their land represent its fair cash value. But they do contend and the evidence clearly shows that the valuations placed on some of their land by Cole-Layer-Trumble were considerably higher than its value solely for farming

purposes. Numerous plaintiffs testified as to the profits from their farming operations. In one case the owner's return from his farming operation was only ¼% of the 100% valuation computed by Cole-Layer-Trumble Company. On the basis of this evidence, plaintiffs allege they have been deprived of their property without due process because their land was so highly valued as to deny them a fair return on their investment, citing *State Public Utilities Com. ex rel. Mitchell* v. *Chicago and West Towns Railway Co.*, 275 Ill. 555, 568. That case, however, is inapposite. It dealt with the rates charged by a State-regulated public utility and merely held that the regulating body should not deprive the utility of a reasonable profit on its investment. In direct contrast to a railroad or other utility, there is no evidence here that plaintiff farmers are compelled by State regulations to continue their farming operations or are subject to any State regulations as to the prices they charge for the commodities they sell.

Plaintiffs also argue that the term "fair cash market value" was in common usage and known to the draftsmen at the time the constitution of 1870 was adopted. They therefore conclude that "the use of the unqualified word 'value' must be considered as expressing something other and different from the words 'fair cash market value'." We cannot accept this reasoning. Section 1 of article IX provides in part as follows: "The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—* * *."

As we read this language, it contains no express method of valuation, but leaves to the legislature the manner of implementing the taxation authorized. As previously indicated, the legislature has provided that: "Each tract or lot of real property shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale."

(Ill. Rev. Stat. 1967, ch. 120, par. 501.) Although no reported case has reached the question of whether this method of valuation was in violation of section 1 of article IX, this court has often applied this test. (*E.g., People ex rel. Rhodes* v. *Turk,* 391 Ill. 424; *People ex rel. McGaughey* v. *Wilson,* 367 Ill. 494.) Plaintiffs quote extensively from *State* v. *Illinois Central Railroad Co.,* 27 Ill. 64. The *Illinois Central* case, however, does not support plaintiffs' position. There is no mention therein of any statutory requirement that valuation be on the basis of fair cash value; there is such a provision here. (Ill. Rev. Stat. 1967, ch. 120, par. 501.) Secondly, there is no indication in that opinion that the taxpayer sought a valuation ·lower than the fair cash value of the property. The flaw in plaintiffs' argument is their insistence that valuation of their property must be controlled by the use to which they are putting it, even though its value for other purposes is implicitly conceded to be greater, and their insistence, in the case of property suitable only for farming, that the value upon which the assessment is based cannot exceed an amount upon which the net farm income constitutes a fair return. Plaintiffs do not seriously argue that their land would not sell for the 100% assessed valuation figure. The constitution's command is that the tax be in proportion to land "value"— not its "value for the purpose for which it is currently being used". Within constitutional limits, taxation is a legislative matter, and the legislature has determined that property shall be assessed on a fair cash value basis, "estimated at the price it would bring at a fair, voluntary sale." There is no evidence that the plaintiff's property was assessed on a basis other than that, and we cannot agree that use of that method here gives rise to any constitutional infirmity. ·

Plaintiffs maintain that section 43 of the Revenue Act of 1939, as amended, (Ill. Rev. Stat. 1967, ch. 120, par. 524) deprives them of their property without due process of law because that section requires that the value of lands and

improvements shall be separately fixed. They support this contention only by reference to the law of eminent domain which holds improper in eminent domain cases the practice of valuing land and improvements separately and then adding the two. While taxation based upon a valuation grossly in excess of fair cash market value could conceivably raise due-process questions, the weakness of plaintiffs' argument here is the absence from this record of any proof that the 100% assessed valuation of their property exceeds, in any amount, its fair cash market value. Absence of such proof establishing that plaintiffs have been injured by employment of this statutorily prescribed assessment method makes further discussion of this contention unnecessary.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*