(No. 43082.—

THE PEOPLE *ex rel.* Joseph L. Needham, County Collector, Appellant, *vs.* H. A. ABBOTT ESTATE *et al.,* Appellees.

*Opinion filed Dec. 4, 1970.—Rehearing denied Jan. 27, 1971.*

WILLIAM H. KNUPPEL, State's Attorney, of Havana, (JOHN J. BRESEE, Special Assistant State's Attorney, of counsel,) for appellant.

GRAHAM AND GRAHAM, of Springfield, for appellees.

Mr. JUSTICE CULBERTSON delivered the opinion of the court:

The county collector of Mason County filed in the circuit court of that county an application for judgment in respect to 1967 taxes paid under protest, and was met with the objections of defendants, some 71 owners of farm properties, who alleged that there had been no valid assessment of their properties for that year, or, in the alternative, that the valuations were so grossly excessive as to amount to

constructive fraud. Some fifteen months later, following a hearing, the court entered an order declaring the 1967 assessments to be void; directing that 1967 taxes be re-extended on the basis of valuations fixed by the board of review on complaints of defendants relating to valuations for 1968 taxes; and ordering refunds to defendants based upon the difference between the 1967 tax as originally extended and as re-extended. And having found the 1967 assessments to be void, the court expressly declined to pass upon the question of whether they were constructively fraudulent. The revenue being involved, the collector has appealed directly to this court for review. Rule 302, 43 Ill.2d R. 302.

Section 1 of article IX of the Illinois constitution of 1870 authorizes the legislature to tax persons in proportion to the value of their property and further directs: "* * * such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, * * *." Broadly speaking, implementing legislation has created a system whereby the function of determining value in counties under township organization rests with the township assessors, the supervisor of assessments and a board of review. The issue here centers around the role and power of the assessors and the supervisor of assessments, respectively, in the statutory scheme.

In our statute relating to township organization, it is provided that a township assessor shall be elected to hold office for 4 years, and that he shall enter upon his duties on January 1 next after his election. (Ill. Rev. Stat. 1965, ch. 139, par. 60.) The duties of the office are set forth in the Revenue Act of 1939, as amended, (Ill. Rev. Stat. 1965, ch. 120, par. 482 *et seq.,*) and, *inter alia,* it is directed that the assessors shall, on or before the first day of June in the year for which the assessment is made, return their books to the supervisor of assessments, each book being verified by an affidavit stating, among other things, that the "assessed value set down in the proper column opposite the

several kinds and descriptions of property is a just and equal assessment of such property according to law." (Par. 575). As to assessments in quadrennial years, it is directed that the assessor or his deputy shall, on or before June 1, actually view each tract or lot of land and set down in the appropriate column of the tax books the values of unimproved lands and improved lands, in the latter case making separate entries as to the value of the land and the value of the improvements. Par. 524.

Section 2 of the Revenue Act of 1939 makes the county treasurer the *ex officio* supervisor of assessments in counties under township organization having less than 150,000 inhabitants, a class into which Mason County falls, and authorizes him to maintain a "property record system (including appraisals)," but states: "* * * such system and records shall not be considered to be assessments nor limit the powers and duties of the assessors as provided by this Act." (Par. 483; *cf.* Ill. Rev. Stat. 1965, ch. 34, par. 425.) Still another direction of the section is that the supervisor of assessments shall, on or before January 1 of each year, assemble all assessors and their deputies for consultation and give them such instructions as shall tend to bring uniformity of assessment throughout the county. Most important here is section 95 of the Revenue Act which provides: "The supervisor of assessments shall have the same authority as the township assessor to assess and to make changes or alterations in the assessment of property, and shall assess and make such change or alterations in the assessment of property as though originally made. Such changes by the supervisor of assessments in valuations returned by the township assessor shall be noted in a column provided therefor, and no change shall be made in the original figures. All changes and alterations in the assessment of real property shall be subject to revision by the board of review in the same manner that original assessments are reviewed." (Par. 576). As a matter of mechanics, it appears that the

tax books have columns lettered "A", in which the valuations of the assessors are entered, and next to them columns lettered "SA" in which assessments and changes or alterations in valuations made by the supervisor of assessments are entered.

From evidence presented at the hearing on defendants' objections, it appears that the township assessors, 13 in all, had, in previous quadrennial years encompassing a period of approximately 25 years, done little more than to transfer the existing valuations to the new books, with but few exceptions. Cognizant of the practice and under the belief that an authentic reappraisal was necessary, the supervisor of assessments, for a two-year period preceding the quadrennial year of 1967, developed a property record system in his office for each tract of farm land aimed at providing a more precise method of arriving at full and fair value. Among the factors considered were prices realized from voluntary sales of tracts in excess of 80 acres, and the high or low productivity of the individual properties being rated.

On January 6, 1967, the supervisor assembled the assessors and deputies to deliver the 1967 tax books to them, and to instruct them in conformity with his statutory duty. At the meeting a discussion arose in regard to the supervisor's property record system, of which the assessors were well aware, and it appears that it was made clear to the assessors that if the need arose the supervisor intended to change their valuation figures by writing in the supervisor's columns the valuations arrived at in his property record system. Confronted with this information, the assessors took the position that it would be a waste of time to enter the assessors' valuations in the books. And although the supervisor advised them that they should perform their statutory duties, the assessors signed their books and returned them to the supervisor at the close of the meeting without having made or entered any valuations. Subsequently, the supervisor entered valuations in his column in the books for each parcel

of real estate, and such assessments were published according to law. (Ill. Rev. Stat. 1965, ch. 120, par. 584.) The board of review, to which the Revenue Act of 1939 gives authority to increase or reduce the entire assessment of either real or personal property or any class included therein, (Ill. Rev. Stat. 1965, ch. 120, par. 589(5),) then made an across-the-board reduction of ten per cent in the valuation of all farm real estate in Mason County.

Approximately one-half of the 71 defendants in the instant proceeding filed individual complaints with the board but, as we interpret the record, were unsuccessful in obtaining further reductions in the 1967 valuations of their properties; the remaining defendants, however, did not avail themselves of their statutory remedy of appealing to the board. (Ill. Rev. Stat. 1965, ch. 120, par. 589.) Nonetheless all of the defendants paid their 1967 taxes under protest and joined in the objections which precipitated the order from which this appeal has been taken. In holding the 1967 assessments to be void, the trial court, by written opinions, construed the applicable statutes to mean that an original assessment by a township assessor is a mandatory step without which an assessment cannot be valid, and that the supervisor of assessments and the board of review have authority to make only "limited revision" of such original assessments. On this basis, the court concluded that the supervisor of assessments here "unlawfully went beyond the functions of his office and legitimate statutory authority" and "usurped the duties, responsibilities, obligations and discretionary judgment of the township assessors."

To support his position that the supervisor acted properly and within the scope of his statutory authority, the collector relies heavily upon *Deal* v. *Nelson,* 43 Ill.2d 192. Pointing to factual differences and to the circumstance that the decision turned largely upon language in a 1965 amendment to 25.16a of the Counties Act, (Ill. Rev. Stat. 1965, ch. 34, par. 425,) as distinguished from section 2 of the

Revenue Act of 1939, (Ill. Rev. Stat. 1965, ch. 120, par. 483), which controls here, it is contended by defendants that *Deal* v. *Nelson* is neither persuasive nor controlling in this case. But we need not decide this question, nor need we consider the extent to which an assessor may change or alter assessments made by the township assessors. Here, although urged by the supervisor to perform their statutory duties, the township assessors made no assessments at all. They could not, by their ministerial failure, defeat the collection of taxes and thus stop the wheels of government. (*Cf. People ex rel. Reinhardt* v. *McRoberts*, 22 Ill.2d 282, 285-286; *Bistor* v. *McDonough*, 348 Ill. 624, 625; *Dunham* v. *City of Chicago*, 55 Ill. 357, 361.) Section 95 of the Revenue Act of 1939, in clear and express terms, gives the supervisor of assessments "the same authority as the township assessor to assess" (Ill. Rev. Stat. 1965, ch. 120, par. 576), and we have no doubt that the legislature, in its wisdom, made such a grant of authority to the supervisor to protect against what occurred here, viz., a failure of the township assessors to perform their statutory duties. Pertinent here is the observation of the court in *Board of Supervisors of Du Page County* v. *Jenks*, 65 Ill. 275, 283-284, when it said: "It can not be that where, from any cause, the constituted authorities refuse or neglect to assess and collect the revenue of the government, that it is powerless to provide other officers and instrumentalities that will, and thus preserve itself from destruction." And as pointed out in *Deal* v. *Nelson*, 43 Ill.2d 192, 196, the legislature acted within its constitutional authority when it gave to the supervisor of assessments "the same authority as the township assessor to assess * * *." Under the circumstances of this case, where it was necessary for the supervisor to act to prevent a failure of the tax, we conclude that the 1967 assessments were not void and that, subject to the remaining objection, the 1967 taxes were properly extended on the assessments of the supervisor as reduced by the board.

As previously noted, the defendants also objected that the assessments of their properties were so excessive as to be constructively fraudulent, and in our consideration of this contention the defendants must be divided into two classes, *viz.,* those who availed themselves of their statutory remedy by seeking relief from the board of review, and those who failed to avail themselves of such remedy. The latter class, having failed to exhaust their administrative remedies by presenting their complaints of fraudulent overvaluation to the board of review in respect to the 1967 assessments, are precluded from seeking a judicial determination or review of such issue. (*People ex rel. County Collector of St. Clair County* v. *Bostwick,* 33 Ill.2d 74; *People ex rel. Nordlund* v. *Lans,* 31 Ill.2d 477; *O'Fallon Development Co.* v. *Ring,* 37 Ill.2d 84.) Nor, inasmuch as the trial court expressly declined to pass upon the question, may we consider on this appeal the claims of fraudulent overvaluation by those defendants who did avail themselves of their administrative remedy by complaining to the board. Whether or not the valuations in question were constructively fraudulent depends on facts which, in the first instance, must be determined by the trial court from the evidence before it.

Accordingly, for the reasons stated, the judgment of the circuit court is reversed and the cause is remanded with directions, first, to enter judgment for the collector against those defendants who did not complain to the board of review in respect to their 1967 assessments, and, second, to determine on their merits the claims of the remaining defendants that their properties were fraudulently overvalued.

*Reversed and remanded, with directions.*