(No. 55229.–

THE TOWNSHIP OF APPANOOSE *et al.*, Appellees, v. COUNTY SUPERVISOR OF ASSESSMENTS *et al.*, Appellants.

*Opinion filed March 16, 1982.–Rehearing denied May 27, 1982.*

Samuel Naylor VI, State's Attorney, of Carthage, for appellant County Supervisor of Assessments.

Tyrone C. Fahner, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellant Department of Revenue.

Hartzell, Glidden, Tucker & Neff, of Carthage (Stanley L. Tucker and Thomas W. O'Neal, of Carthage, of counsel), for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, the townships of Appanoose, Augusta, Bear Creek, Carthage, Chili, Durham, Hancock, Harmony, La Harpe, Pilot Grove, Pontoosuc, Prairie, Rock Creek, Rocky Run, Sonora, St. Albans, St. Marys, Walker and Wilcox, in Hancock County, filed an action in the circuit court of Hancock County against defendants, the Depart-

ment of Revenue of the State of Illinois and the county supervisor of assessments for the County of Hancock, seeking a declaratory judgment that "An Act in relation to township and multitownship assessor" (Pub. Act 81—838) (hereafter Act) was unconstitutional and void. The circuit court held that the Act, as implemented by subsequent legislation and as applied here, was unconstitutional. The judgment was stayed pending appeal. Pursuant to Supreme Court Rule 302(a) (73 Ill. 2d R. 302(a)) defendants appealed directly to this court.

The Act, effective January 1, 1980, revised the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 482 *et seq.*) and, implemented by other legislation not here attacked, provides a statutory scheme for multitownship assessment districts comprised of contiguous townships, and with populations of not less than 1,000. It creates the office of multitownship assessor and provides for elections to that office; it provides that the county supervisor of assessments shall prepare maps suggesting multitownship assessment districts and that such maps shall be subject to the approval of township boards of trustees. In the event that a proposed district is not approved by the townships affected, provision is made for an alternative method of creating the district and for holding public hearings and the resolution of disputes. It provides that the several township boards of trustees comprising a multitownship district shall *ex officio* constitute a multitownship board of trustees for the respective assessment district; it establishes the powers and duties of the multitownship board of trustees with respect to property tax assessment administration matters, including the following:

"(1) the power to allocate the levy of taxes for 1981 and subsequent years necessary to provide the funds required by the budget adopted for the multi-township assessor, (2) the power to determine and approve the budget of the

multi-township assessment district, (3) the power to determine a salary for its assessor, (4) the power to set the compensation of an assessor or multi-township assessor temporarily appointed by the supervisor of assessments to perform the functions of the office because the assessor is physically incapacitated ***." (Ill. Rev. Stat. 1979, ch. 120, par. 482.3.)

It provides that once the board of trustees of a multitownship assessment district has determined the tax levy, the county clerk shall allocate the levy to each township in the multitownship assessment district on a proportional basis; it provides for the transition from the former to the new procedures in townships which become part of the multi-township assessment district; it provides procedures for preparation and adoption of budgets for multitownship assessors; it provides for salaries of multitownship assessors and authorizes them to make contracts and expend money in order to establish and maintain a detailed record system. It is alleged in plaintiffs' amended complaint that pursuant to the Act maps have been prepared proposing multitownship assessment districts comprised of the plaintiff townships.

The circuit court held that the legislation consolidates and merges the office of township assessor into the office of multitownship assessor, and effects the political consolidation and merger of one or more of the plaintiffs, without referendum, in violation of article VII, section 5, of the Constitution of 1970.

Article VII, section 5, provides:

"The General Assembly shall provide by law for the formation of townships in any county when approved by county-wide referendum. Townships may be consolidated or merged, and one or more townships may be dissolved or divided, when approved by referendum in each township affected. All townships in a county may be dissolved when approved by a referendum in the total area in which township officers are elected." Ill. Const. 1970, art. VII, sec. 5.

Defendants contend that the Act does not effect a constitutionally prohibited consolidation or merger of townships, but that, rather, it is a legitimate exercise of legislative power to establish the structure of township government and to provide for the assessment and levy of real property taxes. Defendants argue that under the plain meanings of the terms, "consolidated" refers to situations where two or more townships are abolished and a new township is created, and "merged" refers to situations where one township absorbs another and remains in existence while the other is dissolved. Citing *Springfield Lakeshore Improvement Association v. City of Springfield* (1975), 62 Ill. 2d 173, defendants argue that since no townships are abolished or created under the Act, there has been no consolidation or merger without referendum.

Plaintiffs acknowledge their continued existence as townships and do not dispute the General Assembly's revenue powers, or its power to create, alter or abolish public offices. Plaintiffs contend that the consolidation of the assessment function of township government without referendum is proscribed by section 5. They argue that under the provisions of the Constitution of 1970 townships became "independent unit[s] of local government with constitutional status"; that the constitutional provision "prohibits consolidation or merger of townships either directly or indirectly, completely or partially"; and that the Act results in "a *de facto* consolidation and merger of the political structure, offices, functions, assets, debts, powers, territory and inhabitants of the townships affected."

In support of their contention that the consolidation of functions of township government is subject to the referendum requirement, plaintiffs cite the following passage from the explanation and discussion of section 5 by the Committee on Local Government as set forth in the proceedings of the constitutional convention: "This

decision to require a referendum reflects the view that the form of local government should not be radically changed without the approval of those most directly affected by the change." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1714-15.) The legislation, they argue, is contrary to the clearly expressed intent of the drafters. While acknowledging that the General Assembly has the power to totally withdraw the assessment function of townships, plaintiffs argue that it may not consolidate the assessment functions of townships without the referendum requirement of section 5.

In *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, the court stated that the power to raise revenue through taxation is firmly vested in the General Assembly, both through its inherent powers and by specific grant of the 1970 Constitution; that the power to raise revenue is subject only to such limitations as are expressly stated in the Constitution; and that such express limitations are exclusive. This power includes the specific authority to establish the method of assessment for property tax purposes. To that end the General Assembly created the office of township assessor and, absent a constitutional limitation, may abolish the office, modify its functions, or limit its powers as it sees fit. *Deal v. Nelson* (1969), 43 Ill. 2d 192; see also *Jordan v. Metropolitan Sanitary District* (1958), 15 Ill. 2d 369, 382; *Malloy v. City of Chicago* (1938), 369 Ill. 97, 103; *Groves v. Board of Education* (1937), 367 Ill. 91, 97.

In *People ex rel. Green v. Board of Commissioners* (1898), 176 Ill. 576, the petitioner attacked the validity of a statute which terminated the power of the township supervisors, assessors and clerks to serve as town boards of review with powers to review and revise assessments of property. We find apropos this statement:

> "The objection that the new Revenue law is in conflict with the provisions as to township organization is untenable. The whole *modus oper-*

*andi* of township organization is committed to the legislature, the constitution prescribing no particular form or officers, and the legislature has the power to fix and limit the powers of the township officers, and to modify them at will. To say that because the duties of the township assessor are changed by the new Revenue law, therefore township organization has been destroyed without a vote of the people on the subject is entirely without foundation. The whole scheme of township organization still remains." 176 Ill. 576, 589.

For the reasons stated we find no referendum is required in order to create the multitownship assessment districts, and the judgment of the circuit court is reversed.

*Judgment reversed.*