90 Ill. App.3d 560 (1980)
413 N.E.2d 161
In re APPLICATION OF DOUGLAS AURAND, Winnebago County Treasurer.  (DOUGLAS AURAND et al., Appellants,
v.
LAVERNE ANDERSON et al., Appellees.)
No. 79-442.
Illinois Appellate Court  Second District.
Opinion filed November 19, 1980.
*561 Daniel D. Doyle, State's Attorney, Dale F. Conde, Thomas A. Bueschel, G. Michael Schuerich, of Guyer, Enichen & Mayfield, A. Curtis Washburn, and John Nelson, all of Rockford (Thomas J. Olle, Assistant State's Attorney, of counsel), for appellants.
Michael F. O'Brien, of Paddock, McGreevy & Johnson, Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, and Patrick H. Sreenan, all of Rockford, for appellees.
Judgment affirmed.
Mr. JUSTICE UNVERZAGT delivered the opinion of the court:
This is an appeal from the judgment of the trial court ordering refunds to taxpayers who made payment of their 1977 taxes under protest.
The background of the protests filed by some 2,000 taxpayers relative to about 3,600 parcels of real estate is as follows:
For the 1976 tax year the assessments turned in by the Winnebago township assessors were increased by the Winnebago County supervisor of assessments from the reported assessment level of 33 1/3% of fair cash value to 41.38%. This was in accordance with the board of review's *562 interpretation of section 146 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 627) which the board of review believed required it to equal the 1974 level of assessments for 1976 and 1977. That statute reads in pertinent part as follows:
"With the ratio so ascertained and determined for each county, the Department shall then ascertain the amount to be added to or deducted from the aggregate reviewed assessment on property subject to local assessment jurisdiction, other than property assessed pursuant to Section 20e of this Act, in order to produce a ratio of assessed to 33-1/3% of the fair cash value equivalent to 100%; Provided, (1) if the amount so ascertained for 1975, 1976 and 1977 results in a reduction of the aggregate reviewed assessment from the aggregate equalized assessed valuations for such county existing for the 1974 assessment year, the Department shall ascertain the amount to be added to or deducted from such aggregate reviewed assessment for 1975 and subsequent assessment years in order to produce an aggregate equalized assessed value equivalent to the aggregate equalized assessed value which existed for the 1974 assessment year, except that additions, deletions, depletions and assessment of omitted property in 1975 and succeeding assessment years shall be excluded in making such computation; and
(2) If a county had a ratio of equalized assessed to fair cash value under 33-1/3% for the single assessment year of 1973, the Department shall allow a gradual transition period of 3 years to raise such ratio to 33-1/3% for 1975 and each of the following 2 years, the ratio of assessed to 33-1/3% of fair cash value used by the Department in ascertaining the amount to be added to or deducted from such aggregate reviewed assessment for 1975, and for each of the following 2 years, shall each year be increased in percentage points by 1/3 of the difference between 33-1/3% and the ratio for the assessment year of 1973. For the assessment year 1977 and subsequent assessment years the ratio of equalized assessed to full fair cash value in each county shall be in the ratio of 33-1/3% of fair cash value."
The county superintendent of assessments, upon receipt of the township assessors' tax returns, determined that in order to bring the 1976 aggregate assessed valuation for the county up to the 1974 assessment valuation it was necessary to assess beyond the 33 1/3% of the actual fair value and he added a multiplier factor which raised the actual assessment of real estate in the county to 41.38% of actual fair value rather than 33 1/3%. It is indicated by references in the record before us that this *563 increase resulted in litigation as to the 1976 taxes which was disposed of on a compromise basis by the county making certain refunds.
For the tax year 1977 (taxes payable in 1978), the township assessors assessed and returned their assessments to the superintendent of assessments on the basis of 33 1/3% of the fair cash value without, for the most part, including the 1976 multiplier. These assessments fell into three categories: (1) those assessments which were unchanged from the final 1976 board of review assessment figures; (2) those assessments from which the township assessors had removed the 1976 multiplier factor, and (3) those assessments in which the 1976 board of review multiplier factor had not been included but which had been subject to other increases or revisions based on the merits of the particular case. Upon receiving the figures from the township assessors, the supervisor of assessments added back into the assessments the 1976 multiplier factor where it had not been included by the township assessors, thus bringing the assessments again up to 41.38% of actual fair value.
This change in the township assessors' figures was made and the tax bills sent out without any notice to the taxpayers in those cases where the only change from the township assessors' figures was the addition of the multiplier factor. Certain taxpayers protested these 1977 bills, contending they were illegal because a change had been made in the township assessors' figures without notice to the taxpayers in violation of section 46 of the Revenue Act of 1939 and section 103 of the Act (Ill. Rev. Stat. 1977, ch. 120, pars. 527 and 584). All of the protests which were made solely on the ground that the assessments had been increased by applying the 1976 multiplier factor to the 1977 original assessment figures of the township assessors were routinely denied by the board of review.
The county then filed an application for judgment as to the property for which the 1977 taxes were paid under protest on the basis of the multiplier being added without notice. Thereafter, some 2,000 taxpayers filed objections to the application for judgment by the county collector and requested a refund of the taxes paid under protest to the extent that such taxes had been illegally increased by the application of the 1976 multiplier factor to the assessments of the township assessors. The trial judge ordered a hearing on all central issues in the case. The court heard testimony from various public officials, including the supervisor of assessments, the chairman of the board of review, the deputy chief treasurer of Winnebago County, and the former chief deputy supervisor of assessments, as well as certain taxpayers. While the testimony was limited to a few particular parcels, it was established that those parcels were representative in their particular category of all real estate in Winnebago County falling into that category.
*564 There were three typical fact situations. The "McGreevy" property represented those properties where the assessment had been changed only to the extent caused by the imposition of the 1976 multiplier to the 1977 assessment and no notice of the change from the township assessors' original figures had been given to the taxpayers either by mail or publication. The "Barber-Coleman" properties were typical of the situation where the taxpayer had received notice of the increased assessment and filed an assessment complaint but was denied relief by the board of review. These cases involved some change in the assessment which was made on the merits but in these cases no mention was made in such notice of the effect of the 1976 multiplier factor, which was also involved in the assessment. A third class of properties was that of the protesting taxpayer who had received notice of his increased assessment by the supervisor of assessments based on some other factor than the 1976 multiplier being added, but who failed to file a formal assessment complaint with the board of review. The trial judge determined that all three classes of taxpayers were entitled to refunds.
At the conclusion of the hearing the trial court made findings as to the facts and the applicable law and issued its order of June 5, 1979, which found that the change made by the county supervisor of assessments in imposing the 1976 multiplier factor to 1977 assessments amounted to a change in the assessment, and therefore required that notice be sent to each individual taxpayer, which was not done, thereby making the assessment unlawful. The court further found that in failing to furnish the required affidavit attesting that the assessment was in compliance with the law and represented 33 1/3% of the fair cash value of the properties assessed, in ignoring the township assessors' figures supposedly based on fair cash value and by blanket direction injecting into the computer recording the 1977 assessments, the 1976 multiplier factor rejected in previous litigation, the supervisor of assessments had ignored his duty to consider each property individually and had not acted in good faith in making the assessments.
The court therefore ordered that a refund be made to all taxpayers who had protested their taxes on the ground that the imposition of the 1976 multiplier factor had caused an illegal assessment of their property. This and supplemental orders of the court created refunds to the amount the tax had been increased by the multiplier factor to all taxpayers who had protested their taxes after payment based on the multiplier factor. Some of those awarded refunds had not first filed a complaint with the board of review.
In this appeal, the county and other appellants contend (1) the court erred in ordering refunds to taxpayers who had received notice of the revision but had not exhausted their administrative remedies by filing a *565 complaint with the board of review; (2) the evidence did not support the trial court's finding of actual or constructive fraud in the assessments; (3) the court erred in determining that the application of a multiplier factor amounted to a change in assessment requiring publication and notice to the taxpayers; (4) the court improperly acted as an assessment official; (5) the court erred in treating the proceedings as a class action; (6) unless the case was found to be a class action, the evidence as to three parcels of real estate cannot sustain a verdict as to the actual 3,600 parcels of real estate involved in this litigation; (7) the court improperly delegated its authority in directing the county tax collector to compute the refund and prepare a list of refunds based on the "correct tax"; (8) the court erred in modifying its original order after notice of appeal had been filed; and (9) court erred in granting refunds to those persons who failed to file a written protest with each installment payment.
 1 As to the contention that certain taxpayers cannot recover because they failed to file a written complaint with the board of review, we do not consider this contention because, so far as we can determine, this is a new question raised for the first time on appeal. While it has been held many times that failure to file a proper protest with the board of review will bar a suit in the circuit court to revise an assessment (People ex rel. Needham v. Abbott Estate (1970), 47 Ill.2d 491; O'Fallon Development Co., Inc. v. Ring (1967), 37 Ill.2d 84), in the case before us this issue was waived by failure to raise it in the trial court. As was said in In re Application of County Treasurer (1976), 43 Ill. App.3d 566, 570:
"Although the taxpayer must still exhaust all administrative remedies of review through the Board of Appeals before he challenges an assessment in court [citation], any question of exhaustion of remedies in these cases has not been preserved for review."
We, therefore, do not consider this contention.
The county's second point of appeal is that the evidence does not support a finding of actual or constructive fraud. While the trial court did not actually make a finding of constructive fraud, he did find that the assessor in automatically increasing the assessments beyond 33 1/3% of the fair cash value, without reference to the value of each individual property, did not act in good faith. In some cases where there was an element involved in the assessment other than the application of the multiplier factor and therefore a notice of the revision of assessment was sent to the taxpayer, the court held that because the assessor failed to execute and attach the statutory required affidavit that the standard used was 33 1/3% of fair cash value, while at the same time adding the multiplier factor which increased it beyond such value, the failure to execute the affidavit indicated a disregard of actual value as to that *566 individual property in making the assessment. The county contends, however, that automatic and arbitrary application of the multiplier factor and the failure to attach the affidavit as to value were not such actions as suggest constructive fraud. As to disregard of the actual fair cash value by adding an arbitrary amount to the assessment, the county contends this was done in 1977 in anticipation of the board of review lowering the assessed figure to the statutory level of 33 1/3%, apparently by the equalization process. The county denies that this increase in the assessment beyond 33 1/3% was based on ignorance or disregard of the actual fair value of the various properties, and the county contends that the final result would have been in keeping with the statutory mandate of 33 1/3%. Whether mistaken or not, the county argues, it was done in good faith and not fraudulently. The testimony of the supervisor of assessments, however, indicates that he was well aware that assessments as finalized by him exceeded the established 33 1/3% of fair cash value and that other factors entered into the use of the 1976 multiplier  such as convenience in making future sales' ratio studies and the fact that it was helpful in implementing certain changes in agricultural assessments. The supervisor of assessments testified that his failure to execute the affidavits as to actual fair cash value was simply because he did not believe such affidavit was required of him under the county's computer system of recording assessments.
Thus the mandated standard of 33 1/3% of fair cash value for assessments was actually not the basis of the 1977 assessment and to the extent the statutory standard was knowingly ignored, the assessments cannot be said to have been made in good faith. While an excessive value does not necessarily invalidate the assessment (People ex rel. Joseph v. Schoenborn (1968), 41 Ill.2d 302) and has been held not to amount to constructive fraud even though grossly inaccurate, in this case, the increase in the township assessors' valuations was not revealed to the taxpayers and was not caused by a mere difference of opinion as to value as was true in many cases where such discrepancy in value was held not to be fraudulent. In this case, however, the increase was conscious and deliberate. However, we are not concerned with a question of semantics  whether or not the action of the supervisor could properly be called constructive fraud  but rather whether it was illegal because it amounted to an increase in the township assessors' assessment figures without notice to the taxpayers. Section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 584) provides in part as follows:
"In years other than years of a quadrennial assessment of real property, the assessor, supervisor of assessments or board of assessors, * * *, shall publish * * * a list of real estate for which assessments have been added or changed since the last preceding *567 assessment, together with the amounts of the assessments on such real estate. * * * In every county containing less than 2,000,000 inhabitants, in addition to the publication of the list of assessments of real property in each year of a quadrennial assessment of real property and of the list of real estate for which assessments have been added or changed, as provided above, a notice shall be mailed by the township assessor, county assessor, supervisor of assessments or board of assessors, as the case may be, to each taxpayer at his address as it appears on the assessor's records as to whose real property the assessment has been changed since the last preceding assessment, except in the case of changes caused by a change in the county equalization factor by the Department, during any year such change is made. * * * Such notice shall * * * set forth the procedures and time limits for appealing assessments."
 2 It thus appears that a notice of change in the assessment is required under the circumstances obtaining here if indeed the act of the supervisor of assessments was a change in assessments. The county argues that there was not actually a change in assessments because the supervisor merely reimposed the 1976 board of review factor on the 1977 assessments. Therefore, he did not make any change. This, however, is mere casuistry. We take it that the basis of the tax assessment in any year is the township assessors' figures  if a change is made in those figures after they have been turned in by the township assessor, this amounts to a change  legal or illegal, proper or improper  in the assessment figures. The county argues that there was no change because what the supervisor did in 1977 was merely to reapply the 1976 multiplier factor and since that already existed its reapplication was not a change. However, as we have said, since the 1977 assessment figures of the township assessors were actually changed by the supervisor in many instances from what the township assessors submitted to the supervisor of assessments, and since the township assessors' figures are the starting point, we think there was a change in the assessment. The factor imposed by the board of review for 1976 taxes undoubtedly resulted in a change. That factor was already suspect in 1977 because it had been seriously questioned and protested as to the 1976 taxes and as a result of litigation stemming from its application to the 1976 taxes, a settlement had been made resulting in refunds to many taxpayers. This is clearly reflected in the record before us. Thus we may assume that the deletion of the 1976 board of review factor from the 1977 assessments by the township assessors reflected the township assessors' judgment based on the fair and proper assessment of the property at 33 1/3% without extraneous considerations. The adjustment of that figure in the 1977 taxes to reflect the restoration of the 1976 multiplier *568 may therefore fairly be construed as an increase in the assessment requiring notice under section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 584). While the supervisor clearly had the right to make the change, somewhere along the line the taxpayer clearly had a right to a notice which would alert him to the change in assessment and an opportunity to be heard. That the board of review must furnish such notice and opportunity for hearing is established by several supreme court decisions. See Dietman v. Hunter (1955), 5 Ill.2d 486; Little Sister Coal Corp. v. Dawson (1970), 45 Ill.2d 342.
 3 The contention of the appellants that the trial court improperly acted as an assessment official needs only brief consideration. It is undoubtedly true, as the appellants contend, that a mere difference of opinion as to the value of property is not sufficient to justify the court in overturning an assessment. (People ex rel. Schmulbach v. City of St. Louis (1951), 408 Ill. 491.) But, the court did not change any assessments  its formula for refunds was merely a recitation of the formula as it would have been without the 1976 multiplier, so that in effect, as we see it, the trial court merely eliminated the multiplier factor which had been used without notice to the taxpayers. We do not see this as acting in the capacity of an assessment official  the court only aimed at restoring the statutory valuation of 33 1/3% of value which the court had a right to assume was represented by the township assessors' figures turned in to the supervisor of assessments. It is urged by the county that the elimination of the 1976 positive multiplier in the 1977 assessments resulted in a less than 33 1/3% valuation of property in some instances due to the negative equalization factor which the board of review had applied to equalize assessments between townships. We do not see the board of review's function as being to equalize assessments between particular properties within a single township. The trial court found the application of the equalization factor between townships to have been done properly  at least it found no evidence that it was done improperly. Neither the court nor the board of review has any function of assessment and it would be quite inappropriate for the trial court to try to rectify or adjust the figure resulting after the 1976 multiplier was added, by somehow attempting to offset it by the effect of the negative equalization factor, which may have been applied as between townships, so as to thereby decrease assessments on individual properties where they might have been at more than 33 1/3%. The equalization factor, being based on intercounty differentials, cannot be used to correct or offset the errors in individual assessments within a township  the two have no correlation. The trial court would indeed have been acting as an assessment official if it had tried to offset a township assessor's overassessment by means of a negative countywide *569 equalization factor. Since the functions are different, one cannot rationally be used to offset the other.
The appellants contend that the trial court treated the case as a class action without following the statutory requirement for maintaining a class suit. This contention is based on several remarks made by the court in the course of the trial, referring to the litigation as a class suit. However, aside from these gratuitous remarks, there is nothing to indicate that either the judge, the taxpayers, the State's Attorney, or the intervening taxing bodies ever treated the suit in any way as a class action. It was an application for judgment instituted by the county under sections 225 and 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, pars. 706 and 716), both of which are concerned with the initiation of an application for judgment, finding the correct amount of any tax paid under protest and proceedings in court in such a suit. This is a statutory proceeding and it is provided by section 235 of the Revenue Act of 1939 that "the court shall hear and determine the matter in a summary manner, without pleadings, and shall pronounce judgment as the right of the case may be * * *." The case was initiated by a pretrial conference where the issues were clearly delineated, after which the court held hearings and witnesses appeared and testified as to the facts from which the issues developed.
 4 It was apparent from the testimony and exhibits that there were certain broad categories of defendants (petitioners protesting the application for judgment) being (a) those whose assessments were unchanged from the 1976 board of review final figures; (b) those taxpayers from whose assessment the township assessors had removed the 1976 multiplier factor but made no other change; and (c) those taxpayers whose assessments had been changed both by removing the multiplier and by revision of the assessment on the merits as well. In each case, the 1976 multiplier had entered into the 1977 assessment. When the county refused to stipulate as to certain facts or issues, the trial court, in order to avoid hearing some 2,000 individual cases, heard three cases, each of which represented one of the categories set forth above and the court made findings of fact and law, applying to the protesting taxpayers falling within the facts of the representative cases. The court's judgment was that a refund was due all protesting taxpayers who had not been notified of the change in assessments, calculated on the difference between the extended tax (which included the 1976 multiplier), and the tax which would have resulted if the multiplier had been removed. Judgment was thus predicated on the exact same formula as used by the board of review except that the 1976 multiplier was eliminated. This clearly was not a class action suit  it was not so designated by any of the parties and the requisite findings for maintenance of a class action suit were not made by *570 the court. It was a summary proceeding under the provisions of section 235 of the Revenue Act of 1939. It resembled a class action in the narrowness of the issues and the numbers of persons affected, but no one on either side came forward to object to the procedure the court suggested after the core issues had been outlined. It was not treated by either side as a class action suit requiring certain findings, in spite of the fact that the court once or twice referred to it as such. We think it is too late to raise the point in this appeal. Moreover, this is a technical objection without a showing of prejudice to the appellants. The taxpayers who received the benefit of the judgment in this case are, in fact, in the position of defendants in that the suit was begun by the county as an application for judgment against them. The fact that there are a large number of defendants involved does not make the litigation a class action even though it was mistakenly referred to as such by the trial judge. For that reason the point made by the appellants that the judgment cannot be sustained as to the numerous properties involved, unless it was found to be a class action, is not well taken. It is asserted by the appellants that evidence based on three parcels of real estate cannot support a judgment affecting 3,600 parcels. But the cases cited by the appellants were not tax cases. The trial court in this summary procedure made known its intention to avoid hearing 2,000 tax cases by using representative parcels illustrating the three or four different categories of assessment procedure into which all cases fell. The appellants refused to stipulate to the facts assumed by the court but did not raise any specific objections based on class action considerations. Nor do they point out any properties which were included in the judgment erroneously because they did not fall within one of the classes considered by the court. Again, the objection while theoretically correct is highly technical and exalts form over substance. In the situation actually before the court no special conditions of the properties themselves affected the question before the court  the question at issue was the validity of an assessment process  not the actual fair value of an individual piece of property and the court's procedural choice was narrowed by the county's refusal to stipulate or to admit facts recognized by counsel on both sides. We think the court proceeded in the only practical way possible under the circumstances. While the court may have made a technical error in referring to the case as a class action, this misnomer did not affect the substantial justice of the judgment and the appellants were not prejudiced thereby. We, therefore, reject this contention.
 5 It is also contended that the trial court erroneously delegated its authority when it directed the county collector to compute the refunds due protesting taxpayers. In view of the nature of the case, it is obvious that the county collector was the logical and proper person to calculate the refunds, and we see no error in this delegation of authority under the *571 particular circumstances of this case. The accuracy of the computations was open to examination by counsel for both sides and, in fact, some errors were noted and corrected. Testimony at the hearing by the deputy treasurer regarding the correction of some errors indicated a conscientious regard for accuracy in making the refunds. We see no merit in this objection.
A further contention is made that the trial court erred in modifying its judgment of July 19, 1979, with regard to a certain taxpayer's refund, inasmuch as the appellants had filed their notice of appeal on July 25 and the modification of the judgment was rendered on August 15, after the court, because of the notice of appeal, had lost jurisdiction. It is noted, however, that while the judgment in question was rendered July 19, 1979, it called for a written order thus invoking Supreme Court Rule 272, which provides that where the order calls for a written order to be signed by the judge, the order becomes final only when the written order is signed. (Ill. Rev. Stat. 1979, ch. 110A, par. 272.) Since in this case the order was not signed until August 8, it was not final until after the notice of appeal of July 25. It appears, however, that this point may have been rendered moot by a second appeal filed on September 12, appealing specifically from the order of August 15. We therefore disregard this point.
Finally, the appellants say that the trial court erred in granting refunds to taxpayers who filed a protest as to one installment but not as to both. With regard to this contention, they cite In re Application of County Treasurer (1977), 46 Ill. App.3d 501, as indicating that both installments must be paid and protested in order to make a valid protest subject to refund. A reading of the statute as it was at the time of the protest filed in this case, however, reveals at least an ambiguity on that point. Section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 675), at that time, read in pertinent part as follows:
"The person protesting shall present to the collector 2 copies of the written protest signed by himself. The collector shall write or stamp the date of receiving the same upon the copies, and sign the same, one of which copies he shall retain and the other he shall deliver to the person making the payment under protest.
In counties having 1,000,000 or more inhabitants, and in other counties which have adopted the method provided for in Section 224.1, any such written protest, whether of all or any part of a real property tax, shall be presented to the Collector at the time of payment of the second installment of said tax and at no other time."
The trial court held there was an ambiguity as to whether both installments need be paid before a protest was valid, and he ruled that a protest after payment of either installment was sufficient to entitle the taxpayer *572 to a refund to the extent of any actual overpayment. While the 1979 amendment to section 194 makes it clear that both installments must be paid under protest to justify a refund, the fact that the legislature thought fit to amend the statute indicates an ambiguity previously existed on this point, which we think it was within the court's discretion to resolve in favor of the taxpayer. We find no error in this ruling.
The judgment of the circuit court of Winnebago County is affirmed.
Judgment affirmed.
VAN DEUSEN and WOODWARD, JJ., concur.