THE LAKE COUNTY BOARD OF REVIEW *et al.*, Plaintiffs-Appellees, v. THE PROPERTY TAX APPEAL BOARD, Defendant (The Town of Warren *et al.*, Intervenors-Appellees; Marriott Corporation, Defendant-Appellant).

Second District   No. 86—0590

Opinion filed February 26, 1987.

Charles A. Powell and Paul J. Reilly, both of Powell & Reilly, P.C., of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg, Assistant State's Attorney, of counsel), for appellee Lake County Board of Review.

Jerome N. Robbins and Bruce A. Slivnick, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for other appellees.

JUSTICE REINHARD delivered the opinion of the court:

The Marriott Corporation (Marriott) appeals from the order of the circuit court of Lake County which denied its motion for enforcement of a judgment in its favor by refusing to order the Lake County treasurer's office to issue a cash refund of $458,904.18 for overpaid real estate taxes for 1981.

Marriott raises the following issues on appeal: (1) whether the set-off by the county treasurer of Marriott's 1981 real estate tax refund against real estate taxes owed for 1982 and 1983 is unauthorized by law and void; and (2) whether the trial court erred in refusing to enforce the final judgment requiring a refund of overpaid 1981 real estate taxes.

This case initially involved a challenge of the assessment for the 1981 real estate taxes on the property which comprised Marriott's Great America theme park in Gurnee. The township assessor originally determined that the property had a fair market value of $66,971,862 as of January 1, 1981, resulting in an equalized assessed value of $22,301,630. After unsuccessfully complaining to the Lake County board of review (LCBR), Marriott appealed the assessor's determination of the fair market value of the property to the Property Tax Appeal Board (PTAB). The PTAB determined that the fair market value of the property in 1981 was only $44 million. The LCBR sought administrative review of the decision of the PTAB in the circuit court of Lake County. The circuit court found that the PTAB had erred in its determination of the fair market value of the property, determined the new fair market value to be $50 million, and ordered a refund to Marriott. This court, however, in *Lake County Board of Review v. Property Tax Appeal Board* (1986), 140 Ill. App. 3d 1042, 489 N.E.2d 446, reversed the findings of the circuit court for the reasons set forth in that opinion which are not of issue in this appeal. While there is no documentation in the record, it would appear that Marriott paid the 1981 real estate taxes under protest in compliance with sec-

tion 194 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1981, ch. 120, par. 675).

On March 17, 1986, this court issued its mandate instructing the circuit court to reinstate the determination of the PTAB that the fair market value of the property in 1981 was $44 million and to order such further relief consistent with the opinion. Subsequently, on April 7, 1986, pursuant to Marriott's motion, the circuit court entered judgment on the mandate which reinstated the decision of the PTAB setting the 1981 fair market value of the property at $44 million. The court also determined that the correct amount of the refund exclusive of interest was $501,031.84, that this refund was partially satisfied by one of the taxing districts prior to the appeal, and that the remaining judgment amount was to be $407,487.04 plus 6% *per annum* interest calculated from June 13, 1984, until the entire amount is paid. Although Marriott requested in its motion that the court order the county treasurer to issue a check for the total amount of the refund plus interest, the court did not grant this request, nor did it order the treasurer to issue the refund to Marriott in any particular manner.

Instead of issuing a check for the amount owed, the Lake County treasurer sent a letter dated May 16, 1986, to Marriott's counsel stating that he had complied with the order of the circuit court by offsetting the amount due to Marriott as a refund for the overpayment of 1981 real estate taxes against the amount owed by Marriott for unpaid 1982 and 1983 real estate taxes on the property which comprises the Great America theme park, leaving a balance due the county from Marriott of $10,438.26. The 1982 and 1983 tax liability resulted from the determination of the PTAB on May 7, 1986, increasing the assessment on the real estate for those years.

Disagreeing with the actions of the treasurer, Marriott filed a motion for enforcement of the judgment in the circuit court contending that the treasurer's actions were illegal and contrary to the law and requesting an enforcement order requiring the treasurer to remit a check in the amount owed under the decision of the court. The trial court, however, did not agree with Marriott and, at a hearing on May 28, 1986, denied the motion. A motion to reconsider was denied on June 18, 1986. It does not appear from the record before us that Marriott moved to stay the order of the PTAB concerning the 1982 and 1983 assessments or paid the taxes and protested the decision of the PTAB according to statutory requirements.

■ While Marriott has apparently filed a complaint for administrative review, *mandamus,* and other relief from the PTAB decision on the 1982 and 1983 assessments, this matter is not in the record

and is not material to the question before us. Other documents contained in the appendix attached to Lake County's brief and relied on in its arguments in its brief which were not a part of the record below are also not properly considered by us, and we do not do so. *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 484, 468 N.E.2d 1162; *Cala v. Gerami* (1985), 137 Ill. App. 3d 936, 938, 484 N.E.2d 1199.

As Marriott points out, this appeal does not involve the validity of the 1981, 1982, or 1983 real estate tax assessments levied against the property which comprised Marriott's Great America theme park. Instead, it involves the narrow question of whether the procedure utilized by the county treasurer to collect the real estate taxes due for 1982 and 1983, offsetting an amount owed to the taxpayer as a refund against an amount determined to be owed by the taxpayer on its next due tax bill, was a proper exercise of his authority granted by the statute. Marriott contends that this procedure is contrary to the duties and obligations imposed on the treasurer by the plain language of the revenue statute, that the treasurer lacks the implicit authority to utilize such a procedure for collecting taxes, and that the continued use of this procedure will lead to injustice, confusion, and lack of uniformity in the collection of taxes. It argues that the language of the statutes involved placed a mandatory duty on the treasurer to refund, not credit, the amount of overpayment of real estate taxes for 1981 and that the treasurer's authority to collect the 1982 and 1983 real estate taxes is statutorily prescribed and can only be carried out within the expressed guidelines set forth by statute.

On the other hand, the collecting bodies and the LCBR contend that although the treasurer was bound to follow the decision of the circuit court ordering a refund for the overpayment of 1981 real estate taxes, it is also required to follow the decision of the PTAB setting the amount of 1982 and 1983 real estate assessments on the same property due for the next collection period in 1986. They rely on the language of the statute which mandated that the taxes for 1982 and 1983 be collected in the next taxing period because Marriott, while seeking review of the decision of the PTAB, was still responsible to pay the real estate taxes. As the refund was to be paid out of the next collection of taxes, it was only proper to credit what was due against what was owed.

■ The duty to collect taxes has been placed by the legislature on the county collector (Ill. Rev. Stat. 1985, ch. 120, par. 671), and the treasurers of all the counties have been designated as the county collectors (Ill. Rev. Sat. 1985, ch. 120, par. 657). The functions, powers, and duties of the county treasurer include the obligation to "receive

and safely keep the \*\*\* money and funds authorized by law to be paid to him, and disburse the same pursuant to law." (Ill. Rev. Stat. 1985, ch. 36, par. 4.) While Marriott correctly argues that the treasurer's duties cannot be broadened by implication beyond what is statutorily established (*McKenzie v. Arthur T. McIntosh & Co.* (1964), 50 Ill. App. 2d 370, 377, 200 N.E.2d 138), in construing statutes relating to the collection of taxes, the policy of the courts has been to give them a commonsense meaning so as to avoid making the collection difficult or impossible. *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 575, 369 N.E.2d 1279; *Citizens Federation of St. Clair County, Inc. v. Brown* (1985), 134 Ill. App. 3d 1054, 1058, 481 N.E.2d 879.

■■ Section 111.4 of the Revenue Act of 1939 provides, in part, that "any taxes extended upon such unauthorized assessment \*\*\* shall be refunded with interest as provided in Section 194." (Ill. Rev. Stat. 1985, ch. 120, par. 592.4.) Section 194 provides, in part, that [r]efunds \*\*\* shall be made by the collector in accordance with the final orders of the [PTAB] or the court. (Ill. Rev. Stat. 1985, ch. 120, par. 675.) Section 194, however, also states that "such refunds shall be paid out of the Protest Fund created by Section 192(a) [Ill. Rev. Stat. 1985, ch. 120, par. 673a]." (Ill. Rev. Stat. 1985, ch. 120, par. 675.) Further, it provides that "[i]n the event refunds ordered \*\*\* exceed the funds available in the Protest Fund \*\*\*, the refunds of principal and interest shall be paid out of the first funds collected for such taxing district in the following taxable year." (Ill. Rev. Stat. 1985, ch. 120, par. 675.) Accordingly, the county treasurer was required to pay the refund due Marriott for the overpayment of 1981 real estate taxes on the property which comprises the Great America theme park out of the Protest Fund.

While not directly presented below to the trial court, it would appear from the record that there were insufficient funds in the Protest Fund to pay the refund. This was demonstrated by the taxing districts' request in the prior appeal for a tax deficiency levy to help them recoup the revenues to be lost because of the refund. This is because the treasurer is required to distribute within three years from the date the protest is filed the protested taxes withheld for the making of refunds. (Ill. Rev. Stat. 1985, ch. 120, par. 781.) As the Protest Fund established in this matter in accordance with section 194 was required to be distributed some two years before the April 7, 1986, order to refund to Marriott the overpaid 1981 real estate taxes, the treasurer was required by section 194 to refund the amount out of the first taxes collected in 1986, which were due to be paid in June 1986.

Ill. Rev. Stat. 1985, ch. 120, par. 675; *Lake County Board of Review v. Property Tax Appeal Board* (1986), 140 Ill. App. 3d 1042, 1055, 489 N.E.2d 446.

Although Marriott was entitled to a refund out of the first funds collected in 1986, Marriott was also required to pay an amount into the same collection based on the May 7, 1986, decision of the PTAB concerning the real estate assessments for 1982 and 1983 on the same property. Marriott argues that the decision of the PTAB was not final, as it had the right to have the decision reviewed under the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) by the circuit court, and that, as a result, it was not required to pay any amount in 1986 for its 1982 and 1983 real estate taxes. Marriott, however, ignores the language of section 111.4 which makes the decision of the PTAB binding on the treasurer (Ill. Rev. Stat. 1985, ch. 120, par. 592.4), the language of section 138 which states that "[a]ny review *** under the Administrative Review Law shall not delay the computation, mailing or payment of tax bills" (Ill. Rev. Stat. 1985, ch. 120, par. 619), and the language of section 139 which states that judicial review will not suspend the assessment (Ill. Rev. Stat. 1985, ch. 120, par. 620). As the usual vehicle through which judicial relief from such assessments is sought is provided by statute for paying taxes under protest (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104, 306 N.E.2d 299), Marriott is unable to support its contention that the decision of the PTAB is not final and not binding on the treasurer, and no authority can be found prohibiting the treasurer from acting on the decision of the PTAB as he did under these circumstances. Accordingly, the treasurer was required to collect from Marriott the amount due for underpayment of the 1982 and 1983 real estate taxes, calculated by the treasurer to be $464,342.44, in June 1986, the next period for the collection of taxes.

■ ■ Realizing that the amount he was required to refund to Marriott out of the funds collected in June 1986, $453,904.18, was comparable to the amount Marriott would be required to pay into the fund collected in June 1986, $464,342.44, the treasurer credited Marriott's account for the amount of the refund. This procedure is not expressly provided for in the Revenue Act of 1939; however, this method of collecting taxes also is not prohibited by the Act. While the treasurer is required to pay any refund in accordance with the judgment of the court (Ill. Rev. Stat. 1985, ch. 120, par. 781), the court order did not set forth the method of refunding the overpayment. In fact, Marriott specifically requested an immediate issuance of a check in the amount of the refund when it moved for an order in compliance

with the mandate of this court, but was denied such relief by the trial court. Although a statutory officer can only exercise the power conferred by the statute, a legislative grant of authority implicitly includes the power to take reasonable steps to meaningfully carry out the grant of express authority. (*Citizens Federation of St. Clair County, Inc. v. Brown* (1985), 134 Ill. App. 3d 1054, 1057-58, 481 N.E.2d 879.) This method of refunding the 1981 overpayment of real estate taxes was not inconsistent with the refund order of the circuit court and, in fact, when presented with Marriott's motion to enforce the judgment after the treasurer offset the refund, the trial court implicitly sanctioned this procedure by refusing to grant the relief requested by Marriott. Under these unique circumstances where the circuit court has jurisdiction over the judgment and manner of enforcing its order of refund, we find no error in the procedure used. *Cf., In re Application of Aurand* (1980), 90 Ill. App. 3d 560, 570-71, 413 N.E.2d 161.

Marriott primarily relies on language set forth in *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318, and argues that *Eitel* conclusively demonstrates that any right to a refund or credit of taxes is purely statutory in origin and that the power to issue a setoff or a credit must be expressed within the statute; therefore, the treasurer here lacked the power or authority to confiscate its 1981 refund of real estate taxes because this procedure was not expressly granted to the treasurer. Marriott, however, inappropriately relies on *Eitel* to support its position. *Eitel* involved the right to recover voluntarily paid taxes through a refund or credit and did not address the method in which the refund or credit would be made. The supreme court in *Eitel* disallowed taxpayers' claims for refunds and credits of excessive taxes voluntarily paid as the statute which authorized a refund or credit of taxes voluntarily, although excessively, paid had been repealed, thereby leaving the taxpayers with no statutory right to maintain an action for a refund or credit of taxes voluntarily paid but later determined to be excessive. (371 Ill. 367, 375-76, 21 N.E.2d 318.) *Eitel* is factually distinguishable from this matter, as the circumstances here do not involve a challenge to the right to receive a refund for excessively paid taxes, but concern the method in which this refund is paid by the treasurer.

■■ Marriott also contends that this method of collecting taxes deprives it of its property without due process of law, as the treasurer is taking money which a court has yet to determine was due and owing under the Act. As noted previously, the decision of the PTAB is binding on the treasurer, requiring him to collect the amount owed.

There is no indication that Marriott requested a stay of the PTAB decision under section 3—111 of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—111). Marriott does not claim it is prevented from contesting the decision of the PTAB on the 1982 and 1983 assessments by the treasurer's actions, nor does it claim to be prohibited from obtaining a refund plus interest for any overpayment of real estate taxes for 1982 and 1983 if it is successful in any challenge to the PTAB decision.

Marriott also argues that the failure of the legislature to include a provision in the Revenue Act of 1939 for allowing a credit for overpayment of real estate taxes in addition to allowing refunds indicates its intention to prohibit the use of credits by the tax collector for overpaid taxes. While this theory may have some merit, as other taxing statutes do provide for relief for overpayment of taxes by a refund or credit (see Ill. Rev. Stat. 1985, ch. 120, pars. 9—909, 439.22, 439.50, 439.120, 445), the theory is inapplicable under the peculiar circumstances of this case. The treasurer did not credit Marriott's account to cover some unknown, future amount of taxes. It utilized an existing obligation to pay out a refund to satisfy partially an existing obligation to collect taxes. The circuit court retained jurisdiction to enforce the judgment and did not order an immediate refund.

Marriott also speculates that this procedure utilized by the treasurer will lead to a variety of improper applications violating taxpayers' property rights. As previously noted, this case involves a very narrow set of unique circumstances which do not involve a credit against any future, unknown taxes and is limited by these facts.

Marriott's second contention is that the trial court erred in refusing to enforce the final judgment requiring a refund of overpaid 1981 real estate taxes. Essentially, Marriott argues that the trial court lacked discretion and authority to permit the offset and that the court's authority was limited by our mandate in the prior appeal.

The mandate issued following our prior opinion was complied with by the trial court. The cause was reversed and remanded with directions, and the circuit court was given authority to order such further relief "as is appropriate in the circumstances." The method of ordering a refund was not addressed in our opinion, and thus, the judgment below was not inconsistent with our mandate.

■ We believe also that the circuit court had discretion in the enforcement of the judgment for a refund and, under the circumstances, did not abuse its discretion by denying Marriott's motion which, in essence, sought an order that the treasurer pay the refund from tax receipts collected from the first installment of 1985 tax bills due to be

paid by June 2, 1986. For the reasons previously set forth above, Marriott also owed taxes on June 2, 1986, and no stay order had been sought by Marriott. We find nothing improper in the denial of Marriott's motion.

For the foregoing reasons, the orders of the circuit court of Lake County are affirmed.

Affirmed.

WOODWARD and DUNN, JJ., concur.