COTTER AND COMPANY, Petitioner-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees (Community Consolidated School District No. 26 *et al.*, Intervenors-Appellees).

Second District   No. 2—95—0313

Opinion filed December 29, 1995.—Rehearing denied February 29, 1996.

Thomas J. McNulty and Patrick J. McNerney, both of Keck, Mahin & Cate, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Barbara E. Pitts, Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board.

Anthony M. Peccarelli, State's Attorney, of Wheaton, and David N. Stone, of McHenry, for respondent McHenry County Board of Review.

Christopher G. Guldberg, of Rooks, Pitts & Poust, of Chicago, for appellee Community High School District No. 155.

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Cotter and Company, appeals from a decision of the Illinois Property Tax Appeal Board (Appeal Board) which held that the correct assessment of petitioner's real estate for the 1991 tax year was $3,809,020. The Appeal Board accepted petitioner's evidence, which would have resulted in an assessment of $2,408,985. However, the Appeal Board held that, because petitioner failed to file a complaint before the McHenry County Board of Review (Board of Review) before appealing to the Appeal Board, it was limited to granting relief not greater than the amount that was added as the result of the Board of Review's application of the 1991 equalization factor. On direct appeal to this court, petitioner argues that the assessment is void because the county supervisor of assessments failed to mail petitioner notice of the initial 1991 assessment. We affirm.

Petitioner's property is located at 201-03 Jandus Road in Cary. It consists of a 588,201-square-foot industrial building which is situated on approximately 30.7 acres. For the 1990 tax year, the Algonquin Township assessor (Assessor) certified an assessment of $3,489,080. The Board of Review applied a 1990 township equalization factor which resulted in a final assessment of $3,809,020.

The 1991 tax year was a year of a general assessment. Therefore, the Assessor conducted a quadrennial reassessment of all properties in the township. The Assessor certified an assessment of $3,809,020 for petitioner's property. The supervisor of assessments never mailed petitioner a notice of the 1991 assessment. However, the Assessor did

publish notice of the 1991 assessment. The Board of Review certified a 1991 township multiplier. It applied this multiplier to petitioner's property and arrived at a final assessment of $4,031,467. The Board of Review published notice of its final decision and mailed notice of its final decision to petitioner.

Petitioner appealed the Board of Review's decision to the Appeal Board. Petitioner submitted its own written appraisal in which the appraiser concludes that the fair market value of the property was $7,650,000. Petitioner asserted that a proper assessment based on this appraisal was $2,408,985 (approximately one-third of $7,650,000).

Community High School District No. 155 and McHenry County Consolidated School District No. 26 (School Districts) intervened in the proceedings before the Appeal Board. They claimed that, because petitioner failed to file a complaint before the Board of Review, the Appeal Board's jurisdiction was limited to granting relief no greater than the amount that the Board of Review increased the assessment by applying the 1991 township multiplier (*i.e.*, reducing the assessment from $4,031,467 to $3,809,020).

■ At the hearing before the Appeal Board, petitioner argued for the first time that the Assessor's 1991 assessment was void because the supervisor of assessments never mailed petitioner a notice of the assessment. Petitioner's argument was based on section 103 of the Revenue Act of 1939 (Act), which requires the supervisor of assessments to mail notice to each taxpayer "as to whose real property the assessment has been changed since the last preceding assessment." (35 ILCS 205/103 (West 1992).) The School Districts objected and requested that petitioner be barred from raising this contention. The hearing officer allowed petitioner 30 days to submit a brief in support of its contention regarding notice. The hearing officer then heard petitioner's evidence regarding the fair cash value of its property.

Finding that petitioner's 1991 preequalized assessment had not changed since the last preceding assessment in 1990, the Appeal Board concluded that petitioner was not entitled to mailed notice. The Appeal Board also found that, in any event, petitioner received adequate notice via the published notice and the tax bill that the Board of Review sent petitioner.

The Appeal Board then stated that it agreed with petitioner's evidence of the property's fair cash value and concluded that the assessment certified by the Board of Review was excessive. However, it concluded that, because petitioner failed to file a complaint before the Board of Review, petitioner was entitled to a reduction only in an amount equal to the increase that resulted from the Board of Review's application of the 1991 township equalization factor.

Therefore, the Appeal Board reduced petitioner's assessment from $4,031,467 to $3,809,020. Petitioner timely appealed to this court pursuant to section 111.4 of the Act (35 ILCS 205/111.4 (West 1992)).

The intervening School Districts argue that the Appeal Board should have dismissed petitioner's appeal and that petitioner is now barred from raising the notice argument in this appeal. They claim this is so because petitioner did not raise the notice argument until the hearing before the Appeal Board was about to begin.

■ Section 111.1 of the Act states that the party appealing to the Appeal Board "shall file a petition *** setting forth specifically the facts upon which he bases his objection to the decision of the board of review, together with a statement of the contentions of law which he desires to raise, and the relief he requests." (35 ILCS 205/111.1 (West 1992).) The Appeal Board's rule regarding the filing of the petition contains similar language. (86 Ill. Adm. Code § 1910.30(e) (1991).) The rule also provides:

> "If contentions of law are raised, the contesting party shall submit a brief in support of his position with the petition or within 30 days thereafter. Extensions of time shall be granted in accordance with subsection (d) of this Section. Failure to do so shall result in dismissal of the appeal." 86 Ill. Adm. Code § 1910.30(e) (1991).

The Appeal Board allowed petitioner to file a brief after the hearing and addressed petitioner's legal contentions regarding notice even though petitioner failed to file with its petition either a brief or a proper request for an extension of time. The Appeal Board concluded that the hearing officer had "full authority to *** admit or exclude testimony or other evidence into the record." 86 Ill. Adm. Code § 1910.67(h)(1)(B) (1991).

The Appeal Board also relied on section 1910.67(k) of its rules, which provides:

> "In no case shall any written or documentary evidence be accepted into the appeal record at the hearing unless such evidence has been submitted to the [Appeal Board] prior to the hearing *** or unless the filing requirement is specifically waived by the Board, or unless the submission of the written or documentary evidence is specifically ordered by the Board or by a Hearing Officer." 86 Ill. Adm. Code § 1910.67(k) (1991).

The Appeal Board apparently found that it had the discretion to address petitioner's legal contentions and that petitioner's failure to follow the procedure prescribed in section 1910.30(e) of the rules did not limit the Appeal Board's jurisdiction to hear the appeal. "Although an agency's interpretation is not binding on the court, the court will give great weight to an agency's construction and applica-

tion of its own regulation unless it is clearly erroneous, arbitrary, or unreasonable." *LaBelle v. State Employees Retirement System* (1994), 265 Ill. App. 3d 733, 735-36.

■ The Appeal Board could reasonably conclude that, although its language is mandatory, the rule providing for the dismissal of the appeal where the petitioner fails to follow the procedure for advancing legal contentions is a rule of administrative convenience and not a rule limiting the Appeal Board's jurisdiction. Under such an interpretation, the Appeal Board would have the discretion to address legal contentions even though petitioner failed to follow the correct procedure for advancing those contentions. Such an interpretation is supported by section 1910.67(h)(1)(E), which states that the Appeal Board may "[r]equire the submission of briefs on issues of law raised during the hearing within 60 days of the termination of the hearing." (86 Ill. Adm. Code § 1910.67(h)(1)(E) (1991).) Because we cannot say that this interpretation is clearly erroneous, arbitrary, or unreasonable, we reject the School Districts' argument.

A discussion of the property tax assessment procedure is necessary before turning to the parties' remaining contentions. The 1991 tax year was a general assessment year, which occurs once every four years. (35 ILCS 205/43 (West 1992).) Section 43 of the Act further provides:

> "On or before June 1 in each general assessment year *** the assessor in person or by his deputy shall actually view and determine as near as practicable the value of each tract or lot of land *** and assess the same at $33^1/3$% of its fair cash value, *** setting down the sum in the proper column in the books furnished him." (35 ILCS 205/43 (West 1992).)

In the intervening years, the assessor "shall list and assess all real property which shall become taxable." 35 ILCS 205/44 (West 1992).

After making their assessments, the township assessors return the assessment books to the supervisor of assessments. (35 ILCS 205/94 (West 1992).) The supervisor of assessments has the authority to make changes in these assessments. (35 ILCS 205/95 (West 1992).) The supervisor of assessments also has the power to act as an equalizing authority between townships or assessment districts in the county. This process involves formulating a multiplier for each township. This multiplier determines the amount which must be added to or subtracted from the aggregate assessments in each township so that each property is actually assessed at $33^1/3$% of its fair cash value. See 35 ILCS 205/95a (West 1992).

When this procedure is completed, the supervisor of assessments must turn the assessment books over to the Board of Review. (35

ILCS 205/100 (West 1992).) The Board of Review has the authority either to increase or reduce the entire assessment of real property or to act as an equalizing authority and adjust the assessments by applying its own multiplier. (35 ILCS 205/108(5), 108a (West 1992).)

With this background in mind, we now determine whether the Appeal Board properly concluded that the relief it could provide to petitioner was limited to the amount the Board of Review increased the assessment by applying the 1991 equalization factor. Section 108, which addresses the powers and duties of the Board of Review, states that "[o]n complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct it, as shall appear to be just." (35 ILCS 205/108(4) (West 1992).) Section 111.2, which addresses appeals to the Appeal Board, states:

> "All appeals shall be considered de novo. However, where no complaint has been made to the board of review of the county where the property is located and the appeal is based solely on the effect of an equalizing factor assigned to all property or to a class of property by the board of review, the [Appeal Board] may not grant a reduction in assessment greater than the amount that was added as the result of the equalizing factor." 35 ILCS 205/111.2 (West 1992).

Our supreme court has summarized the procedures available to those aggrieved by the assessment of their property:

> "In counties other than Cook, the taxpayer must first present his complaint to the county board of review. [Citations.] The taxpayer may then select one of two mutually exclusive [citation] routes of challenging the board's decision. First, he may appeal to the Property Tax Appeal Board, whose decision is further reviewable in the courts under the Administrative Review Law [citation]. *** In the alternative, the taxpayer can pay his taxes under protest and file objections to the collector's application for judgment in the circuit court." *Schlenz v. Castle* (1986), 115 Ill. 2d 135, 142.

Here, the Board of Review mailed petitioner notice of the final assessment. Instead of filing a complaint with the Board of Review, petitioner appealed to the Appeal Board. Petitioner took issue with the initial valuation of its property and presented evidence of the property's value without first presenting it to the Board of Review. We conclude that the Appeal Board properly found that this issue was not properly before it and that petitioner's appeal should be limited to the Board of Review's application of the equalization factor. Our supreme court stated long ago:

> " '[I]t is the policy of our law that the whole matter of the valuation of property for taxation shall be committed to the control of

the assessor, the board of review and the board of supervisors of the respective counties, and that a party aggrieved by an excessive valuation *** should apply to the board of review for a correction of the assessment.' " *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 480, quoting *Sanitary District of Chicago v. Young* (1918), 285 Ill. 351, 368.

The Act provides for three instances in which a taxpayer may appeal an assessment directly to the Appeal Board. We have already discussed the first situation provided for in section 111.2. A direct appeal is also available where the Appeal Board renders a decision lowering an assessment after the adjournment of the session of the Board of Review at which assessments for the subsequent year were being considered. (35 ILCS 205/111.4 (West 1992).) The third situation is where the Appeal Board renders a decision lowering an assessment after the deadline for filing complaints with the Board of Review for the subsequent year has passed. (35 ILCS 205/111.4 (West 1992).) The situation presented here falls within only the first provision for a direct appeal to the Appeal Board. We note that, if the Appeal Board had not treated the appeal before it as being based solely on the effect of the equalizing factor, then the Appeal Board would have been without the authority to grant petitioner any relief. Therefore, the Appeal Board correctly determined that it could grant relief only in the amount added as a result of the equalization factor.

Petitioner attempts to overcome this problem by arguing that the initial 1991 assessment was void because the supervisor of assessments failed to mail petitioner a notice of the assessment. According to petitioner, if the initial assessment was void, then the Appeal Board was free to enter an assessment based on petitioner's evidence of the property's fair cash value.

Section 103 contains the notice provisions at issue here. In general assessment years, the supervisor of assessments must "publish for such county *** a full and complete list of the assessment of real property." (35 ILCS 205/103 (West 1992).) In addition to providing for notice by publication, section 103 states:

"[A] notice shall be mailed by the county assessor or supervisor of assessments, as the case may be, to each taxpayer *** *as to whose real property the assessment has been changed since the last preceding assessment* except in the case of changes caused by a change in the county equalization factor by the Department [of Revenue], during any year such change is made. Such notice may, but need not be, sent by a township assessor." (Emphasis added.) 35 ILCS 205/103 (West 1992).

Petitioner was entitled to a mailed notice from the supervisor of

assessments only if there was a change from the last preceding assessment. The Appeal Board concluded that there was no change.

> "Courts generally accord deference to the statutory interpretations of an agency charged with the statute's administration. [Citations.] Thus, while we exercise an independent review of the PTAB's conclusions of law [citation], we may look to its interpretation of its own enabling statute as an informed source for discovering legislative intent." *La Salle Partners, Inc. v. Illinois Property Tax Appeal Board* (1995), 269 Ill. App. 3d 621, 628.

In 1990, the initial assessment by the Assessor was $3,489,080. The Board of Review applied a 1990 township equalization factor which resulted in an aggregate assessment of $3,809,020. In 1991, the Assessor certified an assessment of $3,809,020.

Petitioner claims that there was a change in assessment because the Assessor's initial 1990 assessment is different from the Assessor's initial 1991 assessment. We disagree. Section 103 requires that the mailed notice "contain a brief explanation of the relationship between the assessment and the tax bill (including an explanation of the equalization factors) and an explanation that the assessment stated for the preceding year is after equalization by the board of review in the preceding year." (35 ILCS 205/103 (West 1992).) "The fundamental principle of statutory construction is that courts are to give effect to the intent of the legislature. [Citations.] The first step in determining legislative intent is to look to the plain meaning of the statutory language." *La Salle Partners*, 269 Ill. App. 3d at 625.

Section 103's statement that the assessment for the preceding year is the assessment "after equalization by the board of review in the preceding year" is entirely consistent with the plain meaning of "last preceding assessment." To hold that the last preceding assessment here was the Assessor's initial 1990 assessment before equalization by the Board of Review would unduly strain the plain meaning of the statutory language. Here, the 1990 assessment after equalization by the Board of Review was the same as the Assessor's 1991 assessment. Therefore, there was no change from the preceding year's assessment.

The cases upon which petitioner relies are distinguishable. In *In re Application of Aurand* (1980), 90 Ill. App. 3d 560, the supervisor of assessments applied a 1976 multiplier and increased the 1976 assessments from the reported assessment level of $33^1/3\%$ of fair cash value to 41.38%. In 1977, the township assessors returned their assessments to the supervisor of assessments. The disputed assessments were at $33^1/3\%$ of the fair cash value of the properties and did not include the 1976 multiplier. The supervisor of assessments added the

1976 multiplier back into the 1977 assessments so that the 1977 assessments again equalled 41.38% of fair cash value. See *Aurand*, 90 Ill. App. 3d at 561-63.

We found that the taxpayers were entitled to notice pursuant to section 103 even though there was technically no change since the last preceding assessment. (*Aurand*, 90 Ill. App. 3d at 567-68.) However, there was an element present in *Aurand* which was not present here. The supervisor of assessments made a change in the assessors' figures after the assessors turned in the assessments. (*Aurand*, 90 Ill. App. 3d at 567.) We held that "somewhere along the line the taxpayer clearly had a right to a notice which would alert him to the change in assessment and an opportunity to be heard." *Aurand*, 90 Ill. App. 3d at 568.

Here, there is nothing in the record indicating that the supervisor of assessments made any adjustments to the initial assessment. The first adjustment occurred when the Board of Review applied the 1991 multiplier. Petitioner received notice of this adjustment. Therefore, the problem present in *Aurand* is not present here. Petitioner has received notice of all changes made during the assessment processes whereas the taxpayer in *Aurand* did not.

Petitioner also relies on *In re Application of Anderson* (1984), 123 Ill. App. 3d 507. There, we stated:

"In this case the 1978 assessment was increased by the 1979 equalization factor and the resulting 1979 equalized assessment was increased by the 1980 equalization factor to arrive at the contested 1980 equalized assessment. Such stairstep escalation of the original quadrennial assessment may indeed reflect legislative intent.

We suggest however, that such intent would be recognized only by its author. *** In short the Revenue Act of 1939 never specifically states that the most recent *equalized* assessment becomes 'the last preceding assessment' to which the subsequent equalization factor is applied." (Emphasis in original.) *Anderson*, 123 Ill. App. 3d at 511.

We rejected the county treasurer's argument that the taxpayers were not entitled to notice because there was no change between the 1979 equalized assessment and the preequalized assessment for 1980. (*Anderson*, 123 Ill. App. 3d at 512.) However, the version of section 103 that we construed in *Anderson* did not contain the language clarifying that the previous year's assessment is the assessment after equalization by the board of review in the previous year. (See Ill. Rev. Stat. 1981, ch. 120, par. 584.) Also instructive is section 111, which provides that "[t]he assessment so completed by the board of

review and certified to the county clerk, *and as equalized as provided by law*, shall be the assessment upon which the taxes of that year shall be extended by the county clerk." (Emphasis added.) (35 ILCS 205/111 (West 1992).) These provisions amply reflect that the legislature intended the "last preceding assessment" to be the final assessment after equalization by the board of review.

This conclusion is consistent with the purpose underlying the assessment process. The Act gives a board of review the authority to adjust the assessments for incorrectly assessed property and to equalize assessments where such assessments are not truly assessed at $33^1/_3\%$ of fair cash value. (35 ILCS 205/108(4), (5), 108a (West 1992).) The assessment entered after board of review action presumably reflects the most accurate assessment based on the fair cash value of the property. It is logical that this assessment should serve as the benchmark for comparison to the following year's assessment.

Petitioner directs us to the legislative history surrounding the above-mentioned amendment to section 103 and argues that this history reveals that the legislature did not intend to change the effect of the holding of *Anderson*. However, the rules of statutory construction do not allow "a court to canvass legislative history for evidence of legislative intent if the meaning of a provision can be determined from its text [citation]." (*Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 134.) Because the legislative intent can be gleaned from the language of the Act, we decline to look to the legislative history underlying the amendment to section 103. We hold that the Appeal Board correctly concluded that petitioner was not entitled to a mailed notice of the Assessor's determination of the 1991 assessment of petitioner's property.

For the foregoing reasons, we affirm the Appeal Board's decision.

Affirmed.

GEIGER and DOYLE, JJ., concur.