VILLA RETIREMENT APARTMENTS, INC., Petitioner, v. THE PROPERTY TAX APPEAL BOARD, Respondent.

Fourth District   No. 4—98—0246

Argued December 15, 1998.—Opinion filed January 28, 1999.

R. Stephen Scott and Mark D. Thielen (argued), both of Scott & Scott, P.C., of Springfield, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Michael A. Rakov (argued), Assistant Attorney General, of counsel), for respondent.

JUSTICE GARMAN delivered the opinion of the court:

Petitioner, Villa Retirement Apartments, Inc. (Villa), appeals directly to this court from the February 23, 1998, decision of the Illinois Property Tax Appeal Board (PTAB), pursuant to section 16—195 of the Property Tax Code (35 ILCS 200/16—195 (West 1996)). We affirm.

## I. BACKGROUND

This appeal involves 11 parcels of real estate in the Villa Retirement Center in Fancy Creek Township that are owned or controlled by Villa, a not-for-profit corporation. According to the 1995 assessment notices, the assessed value of the parcels was $1,213,934. On November 6, 1996, notice of changes in real estate assessments for the township was published in the Williamsville Sun. The notice stated:

> "The following is a list of all the real estate assessment[s] in said township for the 1996 assessment year that have been changed or revised by the township assessor and revised or corrected by the Supervisor of Assessments."

None of the 11 Villa parcels was listed in the published notice.

On January 28, 1997, PTAB issued its decision regarding Villa's appeal of the 1995 assessment, reducing the assessed valuation of the 11 parcels from $1,213,934 to $844,155.

On April 1, 1997, a "Notice of Assessment Change" for each parcel was sent to Villa by the Sangamon County Board of Review (Board). The notices informed Villa that the reason for the change was the application of the township multiplier of 1.0864. The aggregate value of

the properties, according to these notices, was assessed at $1,384,761 after application of the multiplier (or $1,274,633 before application of the multiplier). On each notice, the space in which prior publication of the revised assessment would be indicated was left blank. Each notice also contained the message: "YOU MAY APPEAL THIS ASSESS- MENT TO THE PROPERTY TAX APPEAL BOARD, ROOM 402 STRATTON BUILDING, WITHIN 30 DAYS OF THE DATE THIS NOTICE WAS INITIALLY MAILED."

It is undisputed that these are the only notices of assessment given to Villa for the 1996 property taxes due in 1997. The new as- sessed value without the equalization factor was $60,699 greater than the amount originally assessed for the prior year and $430,478 greater than the assessment after it was adjusted by the PTAB. At oral argu- ment, counsel for PTAB pointed out that the assessed value of each parcel was 5% greater on the 1996 notices than on the 1995 notices and suggested that this consistent increase in assessed values was likely due to the application of a multiplier of 1.05 in 1995, rather than any actual increase in the underlying assessments. The record does not contain any information about 1995 multipliers.

Villa filed 11 appeals with the PTAB on April 11, 1997, claiming that the assessed values were in error. These claims were supported by an appraisal of each parcel and a copy of PTAB's January 28, 1997, decision. The Board responded to Villa's appeal by filing "Notes on Appeal" with PTAB regarding each of the properties. Each note indicated that Villa had not filed a complaint or appeared before the Board. The aggregate value of the Board's stipulated assessments was $1,274,632.

On September 10, 1997, the PTAB informed Villa by letter that it had reviewed the evidence provided and determined that reductions in the assessed valuations of the properties were warranted. PTAB sug- gested that the correct assessments would total $1,232,424, and informed Villa that it would issue a decision accordingly if it did not receive a reply within 15 days. PTAB's letter also stated:

"Please be advised that the assessment suggested by the Board of Review is the assessment of your property prior to the applica- tion of the township multiplier. Pursuant to the statute[,] when an appeal to the [PTAB] is filed off of a township multiplier[,] then [our] jurisdiction is limited to the increase caused by the applica- tion of that multiplier. The Board of Review's records indicate that your appeal was filed off of application of the township's multiplier. As a result[,] the [PTAB] cannot lower your assessment below the amount of the assessment before application of the multiplier. However, if you can prove with documentation that you had filed

an appeal with the Board of Review[,] then the [PTAB] would have jurisdiction over the total assessment of your property."

Villa replied by letter on September 15, 1997, arguing that the proposed adjustments merely reduced the assessments to approximately the same levels as the original 1995 assessments, which had been substantially reduced by PTAB. Villa further argued that the correct assessment for 1996 would be $844,155, but did not address the jurisdictional question raised by PTAB.

The PTAB decision, dated February 23, 1998, concludes that the subject properties were overvalued and that a reduction in the assessments is warranted. However, the decision then states:

"[T]he record indicates that the appellant did not file a complaint with the board of review but appealed the assessment directly to [PTAB] based on notice of an equalization factor. Since the appeal was filed after notification of an equalization factor, the amount of relief that the [PTAB] can grant is limited pursuant to section 16— 180 of the Property Tax Code."

The letter quotes section 16—180 of the Property Tax Code, which provides in part:

"Where no complaint has been made to the board of review of the county where the property is located and the appeal is based solely on the effect of an equalizing factor assigned to all property or to a class of property by the board of review, the [PTAB] shall not grant a reduction in assessment greater than the amount that was added as the result of the equalizing factor." 35 ILCS 200/16—180 (West 1996).

The PTAB decision explained that it previously had interpreted this provision to mean that

"where a taxpayer has not filed a complaint with the board of review, but files an appeal directly to the [PTAB] after notice of application of an equalization factor, the [PTAB] cannot grant a reduction of assessment greater than the amount of increase caused by the equalization factor."

PTAB, therefore, reduced the total assessment by the amount of the equalizing factor, from $1,379,520 to $1,274,632.

Villa asked PTAB to reconsider its ruling. PTAB responded that the evidence in the record indicated Villa's appeal was filed after receipt of a notice of application of a township equalization factor. PTAB again quoted section 16—180 of the Property Tax Code and restated its interpretation of that section as limiting its jurisdiction. "Therefore," PTAB concluded, "even though you properly filed with the [PTAB] following receipt of the assessment change notice, the [PTAB] was without authority to grant a greater reduction regardless of the evidence you submitted."

On July 2, 1998, this court allowed Villa's motion to supplement the record on appeal. PTAB argues that none of the material submitted by Villa to supplement the record may be considered on appeal because it was not previously presented to PTAB. Because the presence of this material does not affect the outcome of this appeal, we will not address PTAB's argument.

## II. ANALYSIS

### A. Failure To Name and Serve the Board

PTAB argues that this court should dismiss Villa's appeal for failure to name the Board as a respondent in its petition for direct review. PTAB bases its argument on section 3—113(b) of the Code of Civil Procedure (Code) (735 ILCS 5/3—113(b) (West 1996)) and Supreme Court Rule 335(a) (155 Ill. 2d R. 335(a)).

■ Section 3—113(b) of the Code, which deals with direct review of administrative orders by the appellate court, provides, in part:

> "The petition for review shall be filed in the appellate court and shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed. The agency *and all other parties of record* shall be named respondents." (Emphasis added.) 735 ILCS 5/3—113(b) (West 1996).

Rule 335(a) contains identical language. 155 Ill. 2d R. 335(a). In addition, the committee comments following Rule 335 indicate that it "prescribes the procedure for the review of orders of any agency which the legislature has assigned to the Appellate Court." 155 Ill. 2d R. 335, Committee Comments. The comments cite several specific statutory provisions permitting such review, including "final decisions of the Property Tax Appeal Board where a change in assessed valuation of $300,000 or more was sought." 155 Ill. 2d R. 335, Committee Comments. The statute cited in the comments (35 ILCS 205/111.4 (West Supp. 1992)) has been repealed and replaced by section 16—195 of the Property Tax Code, the provision under which this appeal was brought and which also contains the quoted language.

PTAB relies primarily on the decision of the supreme court in *McGaughy v. Illinois Human Rights Comm'n*, 165 Ill. 2d 1, 12, 649 N.E.2d 404, 410 (1995), which held that the consequences of noncompliance with the joinder requirements of Rule 335 and the identical requirements in section 3—107(a) of the Administrative Review Law (the Review Law) (735 ILCS 5/3—107(a) (West 1996)) are the same—dismissal of the review proceeding. The supreme court noted, however, that the sections of the Review Law dealing with direct review of administrative decisions by the appellate court (735 ILCS 5/3—113 (West 1996)) and administrative review by the circuit court (735 ILCS

5/3—107 (West 1996)) had recently been amended to allow a petitioner, under certain circumstances, to name and serve absent parties of record. *McGaughy*, 165 Ill. 2d at 15-16, 649 N.E.2d at 411-12.

PTAB argues that, under its regulations, the board of review that rendered the decision being appealed is a party to proceedings before it and is required to participate in those proceedings. Therefore, PTAB asserts, the board of review must be named in any subsequent petition for administrative review. PTAB does not provide any citation to authority for this statement, but cites several sections of the Administrative Code that define the role of the board of review in a proceeding before PTAB. Thus, PTAB concludes, in proceedings before PTAB, the board of review is treated like "any ordinary litigant" and is a party of record. In addition, PTAB argues that Villa should not be permitted to amend its petition because the Board was named as a party of record in the final order from which Villa appeals. Section 3—113(b) of the Code provides that the court shall grant the plaintiff in an action such as this 21 days to name and serve the absent party but "only if that party was not named by the administrative agency in its final order as a party of record." 735 ILCS 5/3—113(b) (West 1996).

Villa responds by distinguishing *McGaughy*, arguing that the Board is not a party of record and arguing, in the alternative, that section 3—113(b) of the Code entitles it to 21 days to name and serve the Board because the Board was not named by PTAB in its final order as a party of record. 735 ILCS 5/3—113(b) (West 1996). Villa asserts that *McGaughy* was based on Rule 335 and that this rule does not govern this appeal because this appeal is controlled by section 16—195 of the Property Tax Code, which, unlike the statute at issue in *McGaughy*, does not expressly incorporate the provisions of Rule 335. As the comments to the rule make clear, however, the rule does apply to this case. This does not affect the remainder of Villa's argument because Villa correctly notes that *McGaughy* did not interpret or apply amended section 3—107(a) of the Code. Villa also argues that the Board is not a party of record because Villa did not, and could not, seek relief from the Board and the action appealed from was taken solely by the PTAB. Villa offers no citation to authority supporting its position that a county board of review is not a party of record to an appeal of a decision by the PTAB in this situation.

This court must, thus, address two related issues. First, it must determine, as a general rule, whether the county board of review is a party of record when a taxpayer takes an appeal directly to the PTAB and subsequently seeks administrative review. Second, it must determine whether, in this case, the Board was named as a party of record in the PTAB's decision.

The import of PTAB's argument is that, because its regulations require at least some participation by the board of review when a taxpayer brings an appeal to PTAB, the board of review is, by definition, a party of record to all proceedings before it. Villa's argument is that because, under the circumstances, it was permitted to bring an appeal directly to PTAB without first seeking relief from the Board, the Board is not necessarily a party of record.

■ None of the cases cited by the parties, however, address the issue in this case—whether the board of review is necessarily a party of record in the "three instances in which a taxpayer may appeal an assessment directly to the [PTAB]." *Cotter & Co. v. Property Tax Appeal Board*, 277 Ill. App. 3d 538, 545, 660 N.E.2d 1283, 1287 (1995). This question does not appear to have been raised in any prior cases. Taxpayers routinely name PTAB and the county board of review when seeking appellate review. Our research has not located a single reported case in which the board of review was not also named as a party defendant in an action for administrative review of a PTAB decision. We hold that the board of review is *always* a party of record when the taxpayer has unsuccessfully sought a revised assessment before the board of review and is appealing that ruling to PTAB, but is not *necessarily* a party of record when the taxpayer properly takes his appeal directly to the PTAB. Thus, in such a case, the board of review would have to be named and served only if it were named as a party of record in the final order of the PTAB.

As this court noted in *Fayhee v. State Board of Elections*, 295 Ill. App. 3d 392, 399, 692 N.E.2d 440, 445 (1998), the legislature has provided a second chance for the plaintiff who fails to name a party of record, but only if that party was not named as a party of record in the final order. However, the case law provides little guidance as to what, precisely, makes one a party of record or what it is to be "named" as such. We concluded in *Fayhee* that one could be "named" in the final order, without being "named as a party of record." *Fayhee*, 295 Ill. App. 3d at 399, 692 N.E.2d at 445.

■ The two-page decision of the PTAB makes multiple references to the Board. First, it states that Villa "did not file a complaint with the [Board]." Second, the decision indicates that the "[Board] submitted its notes on appeal wherein the subject property's final assessment totaling $1,384,761 was disclosed." Third, the PTAB states that "[a]fter reviewing [Villa's] evidence, the [Board] agreed to the removal of the equalization factor." PTAB's discussion of its limited authority to grant relief contains several more references to the Board but does not expressly state that the Board is a "party of record."

We conclude that the only way to give effect to the language of

sections 3—107(a) and 3—113(b) of the Code is to give an appellant the opportunity to name and serve an absent party of record unless the final order explicitly states that the party is a party of record. As a result, Villa is entitled to amend its complaint and this appeal will not be dismissed for failure to name the Board as a respondent.

## B. Merits

Although Villa is entitled to amend its pleading to name the Board and the Board is entitled to be heard, we nevertheless reach the merits of this case because only one outcome is possible under the governing statutes.

■ The property tax assessment procedure is explained in detail in *Cotter*, 277 Ill. App. 3d at 543-45, 660 N.E.2d at 1285-87, and will not be repeated in detail here. For purposes of the present case, it is important to note that a taxpayer must generally present his complaint to the county board of review before taking either of two, mutually exclusive, routes to challenge the board's decision. The taxpayer may either appeal to PTAB or pay the taxes under protest and file objections to the collector's application for judgment in the circuit court. *Cotter*, 277 Ill. App. 3d at 544, 660 N.E.2d at 1286. The Property Tax Code also provides for three instances in which a taxpayer may bring an appeal directly to PTAB without first having taken the matter to the board of review: (1) if the sole basis for the appeal is the effect of an equalizing factor; (2) if the PTAB renders a decision lowering the assessment of a particular parcel after the deadline for filing complaints with the board of review; or (3) if such a decision is rendered after adjournment of the session of the board of review at which assessments for the subsequent year are being considered. *Cotter*, 277 Ill. App. 3d at 544-45, 660 N.E.2d at 1286-87. In the second or third instance: "[T]he taxpayer may, within 30 days after the date of written notice of the [PTAB's] decision, appeal the assessment for the subsequent year directly to the [PTAB]." 35 ILCS 200/16—185 (West 1996).

■ In the present case, the time for filing such an appeal with PTAB, in an effort to have the lower assessment made applicable to 1996 taxes, expired on February 27, 1997. Villa now explains that it did not utilize the direct appeal provisions of section 16—185 of the Code because it did not know until April 1, 1997, that its property assessments had been increased after the January 28, 1997, PTAB ruling. PTAB disputes that there was an increase in the underlying assessments and responds that, in any event, Villa did not need notice of the 1996 assessments to appreciate, on January 28, 1997, that it needed to file an appeal within 30 days of that date to secure the benefits of that ruling for the subsequent year.

PTAB proceeded in this case as if it were hearing an appeal under the first provision described above. In such cases, the authority of PTAB is limited by statute so that PTAB may not grant a reduction in the assessment greater than the amount of the increase brought about by the application of the equalizing factor. 35 ILCS 200/16—180 (West 1996). Villa acknowledges this limitation, but argues that it did not bring its appeal directly to PTAB *solely* on the basis of the equalizing factor. In effect, Villa argues that there is a fourth instance in which a direct appeal to PTAB is permitted; that is, when appeal to the board of review would have been impossible or futile.

This court is asked to decide what course of action is available to a taxpayer who discovers, after the board of review has adjourned for the year, that his assessment has been increased and the taxpayer was not informed of that increase either by publication or by a notice mailed to him.

One avenue of relief is for the taxpayer to pay the taxes under protest and then take the matter to the circuit court. *Schlenz v. Castle*, 115 Ill. 2d 135, 142, 503 N.E.2d 241, 244 (1986). Indeed, the supreme court has acknowledged that the payment of taxes under protest followed by objection to the application for judgment provides an adequate procedure to litigate alleged violations of constitutional rights (*First National Bank & Trust Co. v. Rosewell*, 93 Ill. 2d 388, 396, 444 N.E.2d 126, 130 (1982)), such as Villa's claim that its due process rights were violated by lack of proper notice and an opportunity to be heard.

Villa argues that it was not limited to the payment-under-protest strategy, but was entitled to take its claim to PTAB because review before the Board "was precluded by mistake, accident and/or futility," citing *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 547 N.E.2d 437 (1989). In *Castaneda*, the supreme court acknowledged several exceptions to the doctrine of exhaustion of remedies, including "where the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency." *Castaneda*, 132 Ill. 2d at 309, 547 N.E.2d at 439. None of the exceptions applied in *Castaneda*, but Villa argues that this exception applies in the instant case.

Because the Board had adjourned, it was, according to Villa, patently futile to seek relief there. However, the fact that the Board had adjourned is evidenced only by an affidavit, which PTAB has argued is not properly before this court. In any event, Villa acknowledges that it went directly to the PTAB because the April 1, 1997, notices directed it to do so, not because it was aware that the Board was no longer sitting. Villa counters that it should not be penalized for following the instructions given to it by the governmental agency.

Villa cites *In re Application of Clark County Collector*, 116 Ill. App. 3d 539, 452 N.E.2d 100 (1983) (*Applegate*), for the proposition that exhaustion of administrative remedies is excused where there is "confusing legislation involved." In *Applegate*, however, the objecting taxpayers paid a portion of their taxes under protest and filed objections in the circuit court. The collector filed a motion for summary judgment, which was granted, on the basis that the objectors had failed to exhaust their administrative remedies. *Applegate*, 116 Ill. App. 3d at 539-40, 452 N.E.2d at 101. This court reversed and remanded for further proceedings in the circuit court.

Villa also relies on *In re Application of County Collector*, 53 Ill. App. 3d 156, 368 N.E.2d 798 (1977) (*Arizona Metro*), which involved the unusual situation where personal property taxes were assessed on nonexistent personal property (the contents of empty storage tanks). The court found the assessment "void ab initio," "a nullity," and "ineffectual," "having no legal force or binding effect." *Arizona Metro*, 53 Ill. App. 3d at 159, 368 N.E.2d at 800. In such a situation, it would be absurd to require a taxpayer to seek relief from an agency that had no authority to impose the disputed taxes in the first place. *Arizona Metro* is, thus, readily distinguishable from the instant case.

Finally, Villa relies on *Cotter*, where, as here, the taxpayer did not receive a mailed notice of the new assessment (although there was publication notice) and took its appeal directly to PTAB, bypassing the board of review. PTAB, as in this case, held that because the taxpayer failed to file a complaint before the county board of review, it was limited to granting relief not greater than the amount that was added as a result of the equalization factor. *Cotter*, 277 Ill. App. 3d at 540, 660 N.E.2d at 1284. The taxpayer argued for the first time at the hearing before the PTAB that the assessment was void for lack of notice. *Cotter*, 277 Ill. App. 3d at 541, 660 N.E.2d at 1284. PTAB heard the argument, allowed the taxpayer to file a brief, and addressed the issue of lack of notice, despite the taxpayer's failure to follow the established procedure of first taking its complaint to the board of review. The reviewing court held that the PTAB was not precluded from hearing and acting on the issues raised:

"The [PTAB] could reasonably conclude that, although its language is mandatory, the rule providing for the dismissal of the appeal where the petitioner fails to follow the procedure for advancing legal contentions is a rule of administrative convenience and not a rule limiting the [PTAB's] jurisdiction. Under such an interpretation, the [PTAB] would have the discretion to address legal contentions even though petitioner failed to follow the correct procedure for advancing those contentions." *Cotter*, 277 Ill. App. 3d at 543, 660 N.E.2d at 1285.

*Cotter*, however, provides little support for plaintiff's argument because PTAB in that case ruled, and the reviewing court affirmed, that it was limited by statute to reducing the assessment by no more than the amount attributable to the multiplier. *Cotter*, 277 Ill. App. 3d at 545, 660 N.E.2d at 1287. Thus, even if Villa's failure to take its complaint to the Board in the first instance is excused, the outcome before the PTAB, even if PTAB had considered the merits of Villa's case, would have been the same.

We hold that Villa, having failed to utilize the statutory procedure under section 16—185 of the Property Tax Code, was limited to the payment-under-protest tax-objection process to seek relief from increased property taxes imposed without proper notice. The ruling of PTAB is therefore correct and the decision rendered by PTAB is affirmed.

Affirmed.

COOK and STEIGMANN, JJ., concur.