COLLINSVILLE COMMUNITY UNIT SCHOOL DISTRICT No. 10 *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF ST. CLAIR COUNTY *et al.*, Defendants-Appellees (Mark Ostendorf *et al.*, Defendants-Appellees and Cross-Appellants).

Fifth District   No. 5—02—0670

Opinion filed May 11, 2004.

WELCH, J., dissenting.

John W. Leskera and John L. Bitzer, both of Dunham, Boman & Leskera, of Collinsville, for appellant Collinsville Community Unit School District No. 10.

Pearson C.J. Bush, of Pearson Bush Law Offices, Ltd., of East St. Louis, for appellant East St. Louis School District No. 189.

Robert J. Sprague, of Sprague & Urban, of Belleville, for appellees Mark Ostendorf, Paul Garcia, Julia Martinez, Sally Rodriguez, Tina Joaquin, June L. Carril, Ronald Garcia, Joaquin L. Cerna, Vincent Carril and Delores Mena.

No brief filed for other appellees.

JUSTICE KUEHN delivered the opinion of the court:
In this case, we are asked to determine where approximately 65

young students who live in Fairmont City, Illinois, will be publically schooled.

Collinsville Community Unit School District No. 10 (Collinsville Unit 10) and East St. Louis School District No. 189 (East St. Louis No. 189) both appeal from the trial court's September 12, 2002, order affirming the earlier order of the Regional Board of School Trustees of St. Clair County, Illinois (Board). The Board had allowed a petition to detach a section of Fairmont City from East St. Louis No. 189 and to allow that section's annexation into Collinsville Unit 10. The defendant parents of the annexed section of Fairmont City cross-appeal, arguing that the trial court erred in refusing to grant their motion to dismiss the school districts' complaints.

## I. FACTS

### Background

The case began with a petition circulated by residents of Fairmont City. Fairmont City is a divided city for purposes of school district ties. Prior to this case, 60% of Fairmont City children were a part of and attended the schools of Collinsville Unit 10. The remaining 40% of the children were part of and attended the schools of East St. Louis No. 189. In August 2000, residents of the East St. Louis No. 189 portion of Fairmont City began an organized campaign to obtain the signatures of at least two-thirds of the registered voters living within that area. Those signatures were notarized and attached to a document labeled "Petition for Detachment and Annexation."

The petition stated that the geographic area in question fell entirely within East St. Louis No. 189 and that the resident petitioners sought to have its geographic area detached from East St. Louis No. 189 and annexed into Collinsville Unit 10. The petitioners noted that there were no school buildings within the geographic area in question. By inference, the petitioners indicated that they had signatures of two-thirds of the area's registered voters seeking the detachment and annexation. They contended that the actions sought were in the "best interest and educational welfare of students" residing in the area and that the petitioners desired an implementation of "Whole Child" and "Community of Interest" educational concepts. The petitioners further stated that they believed that the two districts had no objections to the plan. Collinsville Unit 10 was alleged to be coterminous and contiguous. Finally, the petitioners stated as follows:

> "Pupils residing in Petitioning Area would benefit greatly by participation in extracurricular and social activities in their local City, Community[,] and schools. Such activity is an essential part of their educational welfare[,] as is camaraderie with other students residing in their local community."

Notice of a hearing on this petition was published in a local newspaper. The hearing was initially set for December 11, 2000, but was rescheduled for January 8, 2001, at the continuance request of Collinsville Unit 10.

## The Hearing

The hearing was held on January 8, 2001. All the members of the Board were present. We will briefly summarize the testimony and evidence adduced at this hearing.

### Testimony for the Petitioners

Shirley Kurry, the principal at Holy Rosary School, a parochial school located in Fairmont City, testified. From talking to parents of students transferring from East St. Louis No. 189 to Holy Rosary School, Ms. Kurry is aware of parental concerns regarding education quality and safety. In her experience, Ms. Kurry found that the transferring students were typically behind the Holy Rosary students of the same grade levels.

Several concerned parents testified in the petitioners' case: Donna Pacheco, Julia Martinez, Jose Otero, and Louis Avila. The parents were concerned about the safety and welfare of their children and about the quality of the education in East St. Louis No. 189. Those parents who had lived in the area for their entire lives all attended Holy Rosary School. One parent moved in with a friend across town in order to be able to attend Collinsville High School. Only one parent had firsthand knowledge of safety problems in East St. Louis No. 189, in that his daughter had been attacked. For her safety, she has now moved in with her grandparents, who reside in a neighboring town in a different school system. Another concern expressed by the parents was the lack of extracurricular activities at the elementary level in East St. Louis No. 189.

### Testimony for East St. Louis No. 189

Guillermo Macia was called on behalf of East St. Louis No. 189. He was the new Illinois certified bilingual teacher at Manners School beginning in November 2000. On a regular basis, he works with somewhere between 32 and 39 students at Manners School. His job is to teach Hispanic children to speak English. Throughout each day, he meets with smaller groups of the Hispanic students for at least 40 minutes per session. Mr. Macia testified that he had not observed any safety issues particularly affecting the Fairmont City children.

Lin Val Thomas next testified on behalf of East St. Louis No. 189. At the time of his testimony, he was the bilingual aide at Manners School, having been hired in September or October 2000. He works with the same students that Mr. Macia does. He testified about the

wonderful working and nurturing relationship they have maintained with these children.

Francine Collins testified that she is an English-as-a-second-language teacher for East St. Louis No. 189 and that she had been so employed since the beginning of the 2000-2001 school year. Previously, she had been the bilingual teacher at Manners School. She does not speak Spanish. Her job is also to teach the Hispanic children to speak English and also to work with the classroom teachers on how to teach these children.

Manners School principal Kelly Thrash, Jr., testified that the 2000-2001 school year was his third year in the position and his thirty-first year with East St. Louis No. 189. As of the date of his testimony, there were 61 Spanish-speaking students at Manners School, of which 53 were from Fairmont City and 8 were from Washington Park. These Fairmont City students are bussed to the school. Because of his belief that the number of Hispanic students will increase in the coming years, Mr. Thrash testified that East St. Louis No. 189 had plans within the next two or three years for a new school building to accommodate the increased population. He testified that there is a high turnover in these students—while they may attend Manners School, by the time they should graduate to junior or senior high, they have transferred out of East St. Louis No. 189. In extracurricular activities, Manners School has a basketball team and is working on getting a teacher to coach soccer but has no band instruction for its students. While he would not describe the St. Clair County Regional Office of Education's 1998 request as being a "mandate," Mr. Thrash noted that the office did tell him that Manners School needed an English-as-a-second-language teacher.

Dr. Nathaniel Anderson is the superintendent of East St. Louis No. 189. He testified that his district had made great strides in getting several of the elementary schools off the Illinois academic watch list. Dr. Anderson indicated that there has been a great deal of instability with the Manners School administration with respect to turnover. Financially, East St. Louis No. 189 is very stable, but it operates under a State of Illinois financial oversight panel. Dr. Anderson believes that it is important for the district not to lose the Hispanic students of Fairmont City because the cultural diversity they bring to the district improves the district.

### Testimony for Collinsville Unit 10

Superintendent Dennis Craft testified that it was his understanding that if the petition was allowed, Collinsville Unit 10 would have an

increase of between 80 and 200 students. An increase of 80 students would mandate additional staffing.[1]

Collinsville Unit 10 employs a neighborhood-schools approach to education, with no present bussing required. The nearest school to the involved Fairmont City students is Kreitner Elementary School, which is 4.4 miles away. He compared the distance between Fairmont City and Manners School as being only 2.6 miles away.

Kreitner Elementary School is currently overcrowded, in that the district has been required to acquire and install two portable units to hold four additional classrooms and transform an open area of the school known as "the pod" into seven additional classrooms, separated by temporary walls, which do not rise completely to the ceiling for heating purposes. The school was not then air-conditioned. The library of the school was then housed in a school hallway.

To house an additional 80 students, Mr. Craft proposed that Collinsville Unit 10 would need to acquire four, or more likely five, additional portable classroom units, for an extra 8 to 10 classrooms. Additionally, Collinsville Unit 10 anticipates the need to hire nine teachers for these 80 students—four classroom teachers, one special education teacher, one physical education teacher, one music teacher, one prekindergarten teacher, and one early childhood education teacher. Additionally, the district anticipates having to hire another assistant principal, one secretary, one speech and language therapist, one Spanish-speaking social worker, one special education teaching assistant, one custodian, two relief aides, and two cafeteria workers. The total projected cost for the first year of educating these 80 students was $1,256,182.

Collinsville Unit 10's only other witness was Jeff Endres, the director of business affairs. His figure of $161,020 in additional state aid was based upon current average daily attendance figures (calculated out to $2,236.39 per student), which was multiplied by 92% of the potential 80 additional students. Collinsville Unit 10 will also receive an additional $762,758 in projected property taxes. Because of the filing date for the tax levy, he does not believe that Collinsville Unit 10 would see the increased property taxes by the fall of the first school year with the additional 80 students. Because he does not believe that the property taxes will be received in the first year, he projected a one-time deficit for the first year in the amount of

---

[1]Despite the figures provided by Manners School and East St. Louis No. 189 that only 65 students would be involved in the annexation, Collinsville Unit 10 chose to base its calculations on estimates of a minimum of 80 students subject to annexation.

$1,095,162. He did not do the calculations to determine the deficit, if any, in subsequent years when Collinsville Unit 10 receives all the relevant taxes and the one-time start-up costs are subtracted.

## Board Decision

At the hearing's conclusion, the Board unanimously voted in favor of the detachment-and-annexation petition. Reasons given by the board members in support of this decision included the test scores indicating that Collinsville Unit 10 was providing a better education to its students, disbelief of Collinsville Unit 10's financial numbers, the seeming loss of students in East St. Louis No. 189 after elementary school, the belief that as Collinsville Unit 10 had dealt with partitions in its buildings for 25 years, the district could continue to do so, and the overriding belief that Collinsville Unit 10 could easily absorb the projected 65 to 80 new students.

## Response to Board Decision

In response to this unanimous Board decision, Collinsville Unit 10 and East St. Louis No. 189 filed petitions for a rehearing before the Board. In essence, Collinsville Unit 10 sought an opportunity to re-present its evidence. Unanimously, the Board denied these petitions on March 5, 2001.

## Administrative Review

Following this denial, Collinsville Unit 10 and East St. Louis No. 189 filed their complaints for administrative review in St. Clair County circuit court. Initially, the complaints did not list individual original petitioners. On April 11, 2002, the trial court denied the petitioners' motion to dismiss the complaints on that basis and allowed the request for leave to file amended complaints including the petitioners. Thereafter, briefs were filed.

On September 12, 2002, the trial court issued its order affirming the order of the Board. The court concluded that the order was supported by the manifest weight of the evidence. Specifically, the trial court noted that the disparities between the Illinois Standards Achievement Test scores of the schools of Collinsville Unit 10 and East St. Louis No. 189 were "substantial," and in every instance the scores were higher for Collinsville Unit 10. Additionally, there was a substantial gap in the parental involvement percentages based upon parental contact, with Collinsville Unit 10 reporting a 100% contact rate, while East St. Louis No. 189 reported only a 43.6% contact rate. While Collinsville Unit 10 continued to argue the alleged financial burdens attendant to the granting of the petition, Judge Rice noted that the financial evidence and testimony had been amply considered and largely discounted by the Board. Although urged to adopt a strict scrutiny standard by East St. Louis No. 189, the trial court found no

basis in the record to deviate from the manifest-weight-of-the-evidence standard of review.

From this order, the two school districts appeal.

## II. ISSUES AND ANALYSIS

### Motion to Dismiss

■ Because a determination of the motion to dismiss could be determinative, we must initially determine if the trial court's decision to deny the motion was erroneous. Typically, our supreme court rules do not allow a party to appeal from a denial of a motion to dismiss, which is an interlocutory order. See 166 Ill. 2d R. 306. Denials of motions to dismiss that pertain to the jurisdiction of the courts can in certain situations be appealable. 166 Ill. 2d R. 306(a)(3). But when, despite the denial of the motion to dismiss, the losing party is completely successful on the merits of the case in the trial court, that party is prohibited from appealing the earlier denial of the motion to dismiss. See *Davis v. International Harvester Co.*, 167 Ill. App. 3d 814, 819, 521 N.E.2d 1282, 1285 (1988).

■ In this case, the petitioners did lose the motion to dismiss in the trial court. While that motion to dismiss addressed the jurisdiction of the court and therefore its denial should be appealable, the petitioners ultimately prevailed in the trial court. Consequently, the petitioners cannot specifically appeal from the trial court's denial of their motion to dismiss.

While the cross-appeal was not appropriate, the petitioners "maintained the right to advance [their] position in support of the trial court's judgment, including a position previously advanced and rejected in a motion to dismiss." *Denis v. P&L Campbell, Inc.*, 348 Ill. App. 3d 391, 394-95 (2004), citing *People ex rel. Barrett v. Bradford*, 372 Ill. 63, 65-66, 22 N.E.2d 691, 693 (1939); *Pate v. City of Sesser*, 75 Ill. App. 3d 233, 240, 393 N.E.2d 1146, 1152 (1979). Therefore, we will address this argument.

■ Section 3—103 of the Administrative Review Law requires the following: "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of a summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***." 735 ILCS 5/3—103 (West 2000). The Illinois Supreme Court has concluded that in this context, the filing of the complaint within the 35-day time frame specified is jurisdictional and that a failure to comply with these requirements prevents a court from reviewing the administrative decision. *Lockett v. Chicago Police Board*, 133 Ill. 2d 349, 354-55, 549 N.E.2d 1266, 1268 (1990). The 35-day time frame for

the issuance of the summons is not jurisdictional but is mandatory, and so long as the litigant can demonstrate a good-faith effort (some circumstance beyond the litigant's control) to secure the issuance of the summons within the 35 days, a dismissal is not mandatory. *Lockett*, 133 Ill. 2d at 355, 549 N.E.2d at 1268. In this case, the school districts clearly filed their administrative review complaints and obtained the issuance of the summonses within the 35-day time limit. At issue is the school districts' omission of the original petitioners as named defendants in their complaints for administrative review. The school districts' complaints failed to include the 10 representatives who had been named in the original detachment-and-annexation petition filed by the residents of Fairmont City.

■ Section 3—107(a) of the Administrative Review Law addresses who shall be named as defendants. The rule clearly requires the inclusion as defendants "all persons *** who were parties of record to the proceedings before the administrative agency." 735 ILCS 5/3—107(a) (West 2000). Section 3—102 of the Administrative Review Law provides that "[u]nless review is sought *** within the time and in the manner herein provided," the litigant will be barred from seeking administrative review. 735 ILCS 5/3—102 (West 2000). Because the Administrative Review Law departs from common law, the procedures set forth in its sections "must be strictly adhered to in order to justify its application." *Lockett*, 133 Ill. 2d at 353, 549 N.E.2d at 1267, citing *Winston v. Zoning Board of Appeals*, 407 Ill. 588, 595, 95 N.E.2d 864, 869 (1950).

■ The petitioners argue that because they had not been named and no summonses had been issued within the 35 days following the service of the order denying the school districts' requests for a rehearing, the complaints for administrative review should have been dismissed. The school districts counter that section 3—107(a) of the Administrative Review Law provides an applicable exception. The relevant language states as follows:

> "If, during the course of a review action, the court determines that a party of record to the administrative proceedings was not made a defendant as required by the preceding paragraph, and *only if that party was not named by the administrative agency in its final order as a party of record, then the court shall grant the plaintiff 21 days from the date of the determination in which to name and serve the unnamed party as a defendant.*" (Emphasis added.) 735 ILCS 5/3—107(a) (West 2000).

The school districts point out that while the petitioners were mentioned in the final orders, the attorney or individual who drafted the order failed to include their names in the orders as "parties of

record." The argument continues that because their names had not been included in that manner, the amendment of the complaints was appropriate.

We find this argument to be specious. There would have been no request for a rehearing by the school districts if the petitioners had not filed the petition in the first place. The petition for detachment and annexation was not filed by the Board or by any of its individual members. Furthermore, neither school district dreamed up the petition. The petition began with the concerned citizens of that portion of Fairmont City who wanted a better educational opportunity for their own children. The petitioners were clearly parties of record to the petition and to the proceedings at issue. They fully participated in the hearing and in the request for a rehearing—represented by counsel. The omission of their names, purposefully or by clerical error, from the final order does not convert the petitioners into nonparties, as the school districts contend.

In further support of this argument, the school districts cite several cases, which we now address. The school districts contend that being named in the final order does not equate to being a party of record. Collinsville Unit 10 cites *Fayhee v. State Board of Elections*, 295 Ill. App. 3d 392, 692 N.E.2d 440 (1998). That reading of the case is somewhat narrow. What the case says is that a mention of the person's name in the final order is not dispositive evidence that the individual is a party of record. *Fayhee*, 295 Ill. App. 3d at 400, 692 N.E.2d at 445. In a broader understanding of this case, if other evidence or law supports the claim that an unnamed individual is a party, then that person's mention in the order is meaningful. Without more, the mere mention of the individual's name is not dispositive evidence of his or her status as a party.

Also cited is *Villa Retirement Apartments, Inc. v. Property Tax Appeal Board*, 302 Ill. App. 3d 745, 706 N.E.2d 76 (1999). This case involves a disgruntled property owner, unhappy with an increased property tax assessment. *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 746-47, 706 N.E.2d at 78. From this case, it appears that there were two methods of review available to such a property owner. *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 751, 706 N.E.2d at 81. One method involved taking the case before the Sangamon County Board of Review. The second method involved bypassing the Sangamon County Board of Review and seeking relief from the Property Tax Appeal Board (PTAB). The property owner opted to bypass the Sangamon County Board of Review and filed its appeal of the assessment with the PTAB. *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 747, 706 N.E.2d at 78. The Sangamon County Board of

Review did file a written response to the assessment appeal by providing the PTAB with notes regarding each of the properties at issue. After the PTAB made its final decision and upon the property owner's request for administrative review, the property owner omitted the Sangamon County Board of Review as a party. *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 749, 706 N.E.2d at 79. At issue was whether the Sangamon County Board of Review had to be named as a "party of record" in the administrative review of the PTAB's decision. *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 751, 706 N.E.2d at 81. On appeal, the court held that if the property owner elected to bypass the Sangamon County Board of Review, then that entity would only need to be named as a party of record on administrative review if the final order of the PTAB explicitly stated that the Sangamon County Board of Review was a party of record. The final order at issue made multiple references to the Sangamon County Board of Review, noting that the property owner had not filed a complaint with the board, that the board had provided notes regarding each property at issue, and that the board had agreed to the removal of the equalization factor. The appellate court concluded that these references, which did not "expressly state that the Board is a 'party of record,' " were insufficient to establish that the Sangamon County Board of Review was a party of record and should have been named in the complaint for administrative review. *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 751, 706 N.E.2d at 81.

This court cited that final language with approval in *United Methodist Village Retirement Communities, Inc. v. Property Tax Appeal Board*, 321 Ill. App. 3d 456, 748 N.E.2d 1230 (2001). The facts of this case are somewhat similar to those of *Villa Retirement Apartments, Inc.* The property owner, upset over a tax assessment increase, decided to fight the increase. *United Methodist Village Retirement Communities, Inc.*, 321 Ill. App. 3d at 458, 748 N.E.2d at 1231. Different in this case is that the property owner started with the Madison County Board of Review, where it did not obtain relief, and thereafter filed an appeal with the PTAB, which entity also denied relief. *United Methodist Village Retirement Communities, Inc.*, 321 Ill. App. 3d at 458-59, 748 N.E.2d at 1232. From that final order, the property owner sought administrative review but failed to name the Madison County Board of Review as a defendant to the complaint. *United Methodist Village Retirement Communities, Inc.*, 321 Ill. App. 3d at 459, 748 N.E.2d at 1232. Based upon the holding in the *Villa Retirement Apartments, Inc.*, case, we explained that the Madison County Board of Review was a party of record, given the fact that the property owner actually appealed the assessment increase before that board and that

the property owner could only amend its pleadings if the Madison County Board of Review was not listed as a party of record in the final order. *United Methodist Village Retirement Communities, Inc.*, 321 Ill. App. 3d at 460, 748 N.E.2d at 1233. Because the Madison County Board of Review was not listed as a party of record in the final order, we allowed the property owner's request to amend the appeal. *United Methodist Village Retirement Communities, Inc.*, 321 Ill. App. 3d at 460-61, 748 N.E.2d at 1233.

These cases are factually distinguishable from the situation with which we are presented. Collinsville Unit 10 attempts to further twist the meaning of the requirement that the order must list the petitioners as parties of record without regard to the factual context of this case and the final order that was issued.

The context of *Villa Retirement Apartments, Inc.* and *United Methodist Village Retirement Communities, Inc.* was that the county board of review was no longer a part of the ongoing administrative appellate process, at which time it was not listed as a defendant in the complaint or on direct appeal. Since the board of review was no longer active in these cases, its mere mention in the final orders was simply a historical reference.

The final orders in this case do not spell out the names of the 10 people who had actually filed the detachment-and-annexation petition. However, the initial order granting the petition makes reference to the "petitioners" and to the "Committee of Ten." The petitioners are certainly "parties of record." We would be stretching logic to find that because the names of the 10 petitioners were not spelled out in the order, their involvement in the case is any less than as parties of record. They appeared at these hearings. They were represented by counsel at these hearings. They provided testimony at these hearings. They were involved at every step of this process and were undeniably parties, because, without them, the subject of this appeal—the petition for detachment and annexation—would not exist.[2]

A case dealing with detachment and annexation relative to school districts is relevant to this issue. In *Board of Education of Bethany Community Unit School District No. 301 v. Regional Board of School Trustees*, 255 Ill. App. 3d 763, 627 N.E.2d 1175 (1994), the petitioners were seeking to detach from one school district and annex onto an

---

[2]Our colleague, Justice Welch, in his dissenting opinion, seems to read the statute as strictly requiring the individual names of the parties of record to have been listed in the orders of the regional school board. The statute allows for the amendment of the complaints if the party of record is completely omitted from the orders at issue. That is not what occurred in this case.

adjacent district. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 763, 627 N.E.2d at 1175-76. The regional school board granted the petition, and administrative review was sought in the circuit court. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 763, 627 N.E.2d at 1176. The circuit court reversed the order of the regional school board, and both the adjacent school district and the petitioners appealed to the appellate court. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 764, 627 N.E.2d at 1176. The adjacent school district, which had not participated in and was not represented at the hearing before the regional school board, was not named in the complaint in the circuit court or on appeal. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 766, 627 N.E.2d at 1177. The appellate court concluded that the adjacent district was a party of record, despite its lack of involvement in the case, and that, therefore, the other school district's request for administrative review in the circuit court should have been dismissed. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 767, 627 N.E.2d at 1178. The case does not discuss the exception to the dismissal rule, which would authorize an amendment if the party had not been named a party of record in the final order.[3] In reaching its decision, the appellate court noted that the situation would be clear if the adjacent school district had participated in the hearing before the regional school board. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 766, 627 N.E.2d at 1177, citing *Spicer, Inc. v. Regional Board of School Trustees*, 212 Ill. App. 3d 16, 19, 570 N.E.2d 678, 681 (1991). In this case, with no participation, the court stated:

> "Once it received notice of the initial Regional Board hearing, it was a party to the proceedings and had to be made a defendant in the review action. To hold otherwise would suggest [that the adjacent school district] was not a party which would be bound by the judgment. Its status as a party is not affected by its failure to

---

[3]The exception to the general rule was an amendment that took effect on January 1, 1992. Ill. Rev. Stat. 1991, ch. 110, par. 3—107(a). This particular case was initiated on May 26, 1992, and so the exception was available. *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 763, 627 N.E.2d at 1175. Because there is no discussion in the opinion about whether the other school district was or was not listed as a party of record in the final regional school board order, we assume that the parties chose, for whatever reason, not to raise the exception or that the exception was clearly inapplicable.

appear and participate. [The adjacent school district's] rights, as the annexing district, would necessarily be affected by the decision to grant or deny the petition. Therefore, it must be considered a party of record, regardless of whether it participated in the hearing. It thus had to be named as a defendant in the administrative review action. Because plaintiff failed to name and serve [the adjacent school district] within the 35-day time frame, plaintiff's petition should have been dismissed." *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 767, 627 N.E.2d at 1177-78.

The court found additional support for its position in section 7—7 of the School Code, which provides as follows:

"[A]ny resident who appears at the hearing or any petitioner or board of education of any district affected may within 35 days after a copy of the decision sought to be reviewed was served by registered mail upon the party affected thereby file a complaint for a judicial review of such decision in accordance with the Administrative Review Law and the rules adopted pursuant thereto." 105 ILCS 5/7—7 (West 2000).

The court explained that if the school district maintained the right to appeal the decision of the regional school board without having participated at the hearing, then "it should be considered a party of record for administrative review proceedings." *Board of Education of Bethany Community Unit School District No. 301*, 255 Ill. App. 3d at 767, 627 N.E.2d at 1178.

In our case, because the petitioners were parties of record, they should have been named and served within the 35-day time limit. They were not. Neither the school districts involved nor the petitioners seeking detachment and annexation were explicitly labeled as "parties of record" in the final orders at issue. We do not believe that the exception to the 35-day rule means that the order must have a special paragraph labeling who the parties of record to the proceeding were. We cannot conclude that this omission, if it can even be labeled as an omission, means that there were no parties of record in this case.

The petitioners were referenced in the order *en masse*, were present and testified, and were represented by counsel at all the relevant hearings. We find that the petitioners were clearly parties of record in the proceedings. Because they were not specifically named in the final orders but were referenced as merely the petitioners, the school districts failed to name them as parties in their complaints for administrative review. The complaints failed to name, and the school districts failed to serve, parties of record in a timely fashion as required by statute. Therefore, the trial judge lacked jurisdiction to allow the

school districts' request to amend their complaints and to thereafter specifically name each of the parties of record. The trial judge should have granted the petitioners' motion to dismiss the complaints.

Because we conclude that the complaints should have been dismissed by the trial court, we do not reach any of the issues raised by the school districts. The orders of the Board stand.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby vacated, and in keeping with this court's powers pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we hereby dismiss the cause of action.

Vacated; cause of action dismissed.

HOPKINS, J., concurs.

JUSTICE WELCH, dissenting:

I agree that the order of the circuit court must be reversed. However, I do not agree that the court lacked jurisdiction to allow an amendment of the complaint. I believe that both the order of the Board and the order of the circuit court are against the manifest weight of the evidence presented in this case, and I would reverse those orders.

Although the majority focuses on the issue of jurisdiction, I believe that in this case the question of jurisdiction is simple and straightforward: the plain language of section 3—107(a) mandates that "if [the omitted party] was not named by the administrative agency in its final order as a party of record, then the court *shall* grant the plaintiff 21 days from the date of the determination in which to name and serve the unnamed party as a defendant." (Emphasis added.) 735 ILCS 5/3—107(a) (West 2000). It is undisputed that the petitioners were not named as parties of record in the Board's final order. Accordingly, the circuit court was required by law to allow the plaintiffs to amend their complaint within 21 days in accordance with section 3—107(a).

Established precedent should compel this court to reverse the order entered by the Board and affirmed by the circuit court. In *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 356, 358 (1992), the Illinois Supreme Court reiterated the long-standing rule that petitions for detachment and annexation should be granted only where the petitioner has shown that the overall benefit to the annexing district and the detachment area, considered together, clearly outweighs the resulting detriment to the losing

district and the surrounding community as a whole. In applying this benefit-detriment test, the following factors must be considered: (1) the differences between facilities and curricula, (2) the distance from the petitioners' homes to the respective schools, (3) the effect detachment would have on the ability of either district to meet state standards of recognition, (4) the impact of the proposed boundary change on the tax revenues of both districts, and (5) the "whole child" and "community of interest" factors, *i.e.*, the identification of the petitioning territory with the district to which annexation is sought and the corresponding likelihood of participation in school and extracurricular activities. *Carver*, 146 Ill. 2d at 356. The court stressed, as it had in previous cases, that although the personal desires of the petitioning parents may be taken into account, more than a personal preference is needed to support a change in school district boundaries. *Carver*, 146 Ill. 2d at 356.

Applying these factors to the case at bar, it is abundantly clear that the decision to allow the detachment was against the manifest weight of the evidence. As to the first factor—differences between school facilities and curricula—the evidence presented shows that East St. Louis No. 189 is in a far better position to appropriately house, instruct, and accommodate students in the detachment area than is Collinsville Unit 10. At present, East St. Louis No. 189 has adequate space and resources for all the detachment-area students, and in the very near future, with an $80 million grant from the State of Illinois, the district plans to build new schools, including a brand-new, air-conditioned grade school in the heart of the Fairmont City/Washington Park area that will be able to operate year-round to serve the needs of the detachment-area students. Collinsville Unit 10, on the other hand, already faces a serious overcrowding problem, with the school that most of the detachment-area students would attend, Kreitner Elementary School, already strained to the point that seven classrooms now occupy the space designed for four and the school library is placed in the hallway of the school. Two mobile classrooms, much like mobile homes, are presently in use, and as many as four additional mobile classrooms would be needed if the detachment occurred. As to differences in curricula, the petitioners, who bore the burden of clearly demonstrating that the benefits of detachment outweighed the detriments, failed to provide any evidence that there are courses of study available at Collinsville Unit 10 that are not available at East St. Louis No. 189. To the contrary, the "evidence" provided by the petitioners consisted of anecdotal hearsay to the effect that they believed their children would receive a better education in Collinsville Unit 10. Disregarding this anecdotal hearsay and focusing

on the facts, it is undisputed that East St. Louis No. 189 has hired a teacher certified in bilingual education and a teacher's aide certified in bilingual language to assist the detachment-area students, many of whom have great difficulty communicating, either orally or in writing, in English. East St. Louis No. 189 also employs an English-as-a-second-language teacher. The East St. Louis No. 189 administration has been very supportive of the bilingual education efforts in the district. Collinsville Unit 10 has no such teachers, and the recruitment of trained, competent teachers would be costly in terms of money, time, and effort expended. Accordingly, the first *Carver* factor weighs heavily against a detachment.

As to the second factor—distance from the petitioners' homes to the respective schools—it is undisputed that Collinsville Unit 10's Kreitner Elementary School is 4.4 miles from downtown Fairmont City, whereas East St. Louis No. 189's Manners School is only 2.6 miles from Fairmont City, or roughly half as far. As noted above, East St. Louis No. 189 plans to build a new grade school in the heart of the Fairmont City/Washington Park area. "Build it and they will not come." This factor, too, weighs against a detachment.

As to the third factor—the effect a detachment would have on the ability of either district to meet state standards of recognition—the petitioners provided absolutely no evidence regarding the possible benefits of a detachment or regarding the detriments. Accordingly, the Board, the circuit court, and this court are not in a position to assess the relevancy of this factor to the case at bar, although I stress again that it is the petitioners, not the school districts, who must clearly make the case for a detachment.

As to the fourth factor—the impact of the proposed boundary change on the tax revenues of both districts—the evidence shows that East St. Louis No. 189 would lose approximately $245,000, an admittedly small amount to East St. Louis No. 189. The cost to Collinsville Unit 10, however, would be substantial. In undisputed testimony, the director of business affairs for Collinsville Unit 10, Jeff Endres, stated that even after accounting for the increase in income to the district from property taxes paid by the Fairmont City residents and additional aid from the State of Illinois, the district would experience an annual deficit of $330,000 if forced to take on the detachment-area students. Additionally, a one-time deficit of $1.1 million would be incurred if the annexation took place before the district was permitted to levy and collect taxes from the annexed area. These financial burdens would come at a time when the district is already facing a deficit of $2.5 million. Testimony showed that East St. Louis No. 189, on the other hand, is stable financially and recently received an upgrade in its

credit rating. There was nothing inherently improbable in the evidence offered by the school districts, and that evidence was uncontroverted and unimpeached. Nevertheless, at least one board member took issue with the evidence, and even the majority concedes that "disbelief of Collinsville Unit 10's financial numbers" was a factor in the Board's decision. 348 Ill. App. 3d at 691. Although this court would normally defer to an administrative body's findings of fact, those factual findings must still be based on the evidence. *Crabtree v. Illinois Department of Agriculture*, 128 Ill. 2d 510, 518 (1989). Because the Board's findings of fact were not based upon the evidence presented, the findings should be accorded no deference. Accordingly, disregarding the findings of the Board and looking at the actual evidence, described above, I believe that it is clear that this factor, too, weighs against a detachment.

As to the fifth and final *Carver* factor—the identification of the petitioning territory with the district to which annexation is sought and the corresponding likelihood of participation in school and extracurricular activities—the petitioners again failed to provide evidence supporting the detachment. The petitioners offered no testimony demonstrating that the detachment-area students, in general, identify more closely with the community within Collinsville Unit 10 than with the community within East St. Louis No. 189. To the contrary, the evidence clearly and unequivocally shows that East St. Louis No. 189 has already taken many steps to accommodate language and other cultural issues of the detachment-area students, whereas Collinsville Unit 10 has not yet done so. The testimony of one parent that his children would have better opportunities for extracurricular activities such as sports in Collinsville Unit 10 was effectively refuted when the parent was forced to concede that he did not know whether the sporting activities he had "heard about" were offered by Collinsville Unit 10 or by the Collinsville Area Recreation District. Finally, although no other evidence on this factor was offered by the petitioners, it should be noted that the area of Collinsville Unit 10 that borders the detachment area is mainly rural, whereas the detachment area is predominately urban. Accordingly, the detachment area is more like the area it is attempting to detach from than the area in Collinsville Unit 10 to which it is adjacent. The fifth *Carver* factor weighs strongly against a detachment. Indeed, all the evidence presented in this case weighs overwhelmingly against a detachment. Not one *Carver* factor favors a detachment. The decision of the Board is clearly and unequivocally contrary to the manifest weight of the evidence and should be reversed.